## In re NESTO.

## Appeal of ELLIS.

(Circuit Court of Appeals, Third Circuit.   February 2, 1921.)

No. 2583.

1. **Sales ⊶296—After delivery or after commencement of transportation to another destination, right of stoppage in transit is gone.**

Under Act Pa. May 19, 1915, P. L. 558, § 57, and also independent of that act, a seller's right to stop goods upon the buyer's insolvency is restricted to the transit, which terminates with the delivery; and if the goods are moved towards another destination under fresh directions by the purchaser, the seller's right to stop is gone.

2. **Sales ⊶162—Delivery may be actual or constructive.**

Delivery, in the law of sales, may be either actual or constructive.

3. **Sales ⊶162—"Actual delivery" and "constructive delivery" defined.**

"Actual delivery," in the law of sales, consists in giving the buyer or his accredited agent the real possession of the goods sold, while "constructive delivery" comprehends those acts which, though not truly conferring real possession, are held by construction of law equivalent to acts of real delivery, and includes symbolical or substituted delivery.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Actual Delivery; Constructive Delivery.]

4. **Sales ⊶156—Actual or constructive delivery both contemplate change of control and custody.**

Both actual and constructive delivery contemplate the absolute giving up of the control and custody of the goods on the part of the seller and the assumption thereof by the buyer.

5. **Sales ⊶296—Reconsignment by buyer to himself held not to prevent stoppage in transit.**

Where a buyer of goods shipped to him by carrier, without assuming their possession, or even seeing them, had them reconsigned to himself under a fictitious name at a new destination a few days before a bankruptcy petition was filed, there was no delivery, actual or constructive, preventing the seller from exercising his right of stoppage in transit, as the law will not hold that there has been a constructive delivery in aid of an obviously fraudulent transaction.

6. **Sales ⊶296—Permitting reconsignment not acknowledgment by carrier that it held for buyer, so as to prevent stoppage in transit.**

Under Act Pa. May 19, 1915, P. L. 559, § 58, subsec. 2 (b), providing that goods are no longer in transit when, after their arrival, the carrier acknowledges to the buyer that he holds them on his behalf, and continues in possession as bailee for the buyer, a carrier did not make such acknowledgment and continue in possession as bailee for the buyer, by permitting the buyer to reconsign the goods to himself at another destination.

7. **Sales ⊶296—Carrier's refusal to surrender without security held not wrongful, so as to prevent stoppage in transit.**

Under Act Pa. May 19, 1915, P. L. 559, § 58, subsec. 2 (c), providing that goods are no longer in transit if the carrier wrongfully refuses to deliver them to the buyer, a carrier's refusal to deliver goods to the buyer's receiver in bankruptcy without security against liability to the seller, arising from its notice of its exercise of the right of stoppage in transit, was not wrongful, where the seller's right was sustained.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

---

⊶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Bankruptcy proceeding against R. Nesto. From an order requiring the payment of the proceeds of certain property to the Connellsville Macaroni Company, A. C. Ellis, receiver, appeals. Affirmed.

Lowrie C. Barton, Jacob Roe, and A. H. Kaufman, all of Pittsburgh, Pa., for appellant.

E. C. Higbee and John Duggan, both of Uniontown, Pa., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMPSON, District Judge.

WOOLLEY, Circuit Judge. This case turns on one fact, which—though later controverted by the pleadings—was established by the appellant's admission. We therefore regard the facts as undisputed. They are these:

Connellsville Macaroni Company sold R. Nesto a carload of macaroni on credit and consigned it to him at Pittsburgh. The car arrived at Pittsburgh on November 12, 1919. Nesto at once reconsigned the car to R. Ferri at New York, where it arrived on November 20. On the same day an involuntary petition in bankruptcy was filed against R. Nesto in the District Court of the United States for the Western District of Pennsylvania and A. C. Ellis, the appellant, was appointed Receiver. On the next day the court issued an order in the nature of a writ of seizure, directing the Pennsylvania Railroad Company, the carrier under both consignments, to deliver the car to the Receiver, and restraining delivery to any one else. The carrier, while obeying the injunctive feature of the order, refused to surrender the car without security. On November 24, the Macaroni Company exercised a claimed right of stoppage in transitu by serving notice upon the carrier at New York not to deliver the carload of goods to R. Ferri, the named consignee, but to reconsign the same to it at Connellsville, Pennsylvania. On November 25, the Receiver petitioned the court for authority to give the carrier the security it required. On December 1, the Macaroni Company filed a petition praying the court to modify its order by directing the carrier to reconsign the car to it under its claimed right of stoppage in transitu, and for a rule on the Receiver to show cause why the same should not be done. The rule issued. Before its return, the Receiver was granted leave to execute a bond of indemnity to the Director General of Railroads; and on its delivery he obtained possession of the carload of goods. By arrangement of the parties the macaroni was sold and the proceeds retained to await the outcome of this controversy. On hearing, the court made the rule absolute and ordered the Receiver to pay the proceeds of the sale to the Macaroni Company. From this order the Receiver appeals.

[1] On these facts alone there can be no dispute as to what the law is or what the decision should be. The law briefly stated is this: In the sale of goods to one becoming insolvent, the vendor's right to stop them is restricted to their transit. After their arrival at the appointed destination and their delivery to the purchaser the transit is at an end; and if later, the goods are moved toward another destination under fresh directions by the purchaser a new transit is begun,

which is no part of the original transit, and the vendor's right to stop is gone. Benjamin on Sales, Rule 48–C. This principle of law is embodied in the Sales Act of Pennsylvania (Act of May 19, 1915, P. L. 543, 558) where it is said:

"Sec. 57. Subject to the provisions of this act, when the buyer of goods is or becomes insolvent, the unpaid seller who has parted with the possession of the goods has the right of stopping them in transit; that is to say, he may resume possession of the goods at any time while they are in transit, and he will then become entitled to the same rights in regard to the goods as he would have had if he had never parted with the possession."

In aid of the exercise of this right, the statute defines affirmatively when the goods are in transit and negatively when they are not. Of these several provisions, the only ones pertinent to this issue are the following:

"First. Goods are in transit, within the meaning of section fifty-seven—

"(a) From the time when they are delivered to a carrier by land or water, or other bailee, for the purpose of transmission to the buyer, until the buyer, or his agent in that behalf, *takes delivery* of them from such carrier or other bailee.

   *    *    *    *    *    *    *    *    *    *    *

"Second. Goods are no longer in transit, within the meaning of section fifty-seven—

   *    *    *    *    *    *    *    *    *    *    *

"(b) If, after the arrival of the goods at the appointed destination, the carrier or other bailee acknowledges to the buyer or his agent that he holds the goods on his behalf and continues in possession of them as bailee for the buyer or his agent; and it is immaterial that further destination for the goods may have been indicated by the buyer;

"(c) If the carrier or other bailee wrongfully refuses to deliver the goods to the buyer, or his agent in that behalf." Laws 1915, P. L. 558, § 58.

In a word it appears from both the general rule and its statutory embodiment that a seller's right of stoppage in transitu upon discovery of the buyer's insolvency rests on the fact that the goods are in transit; and the fact of transit turns on the question whether or not delivery has been made to the buyer. Applying this test to the surface facts of this case (which show that Nesto, the buyer at Pittsburgh, although he never assumed actual possession and therefore never took actual delivery of the goods, rebilled the goods to an ostensibly new purchaser at a new destination), it would seem that Nesto had acquired such dominion and had exercised such control over the goods as to establish a new transit and defeat the seller's right of stoppage therein. In re W. A. Paterson Co., 186 Fed. 629, 108 C. C. A. 493, 34 L. R. A. (N. S.) 31; Lickbarrow v. Mason, 2 East, 63; Harris v. Pratt, 17 N. Y. 249.

But these are not all the facts. The controlling one, which we now state, came into the case in this way:

On November 25, 1919, the day following the exercise by the Macaroni Company of its claimed right of stoppage in transitu, the Receiver of Nesto filed the petition in the District Court to which we have already referred, reciting the carrier's refusal to turn over to him the merchandise without securing it against liability therefor, and asserting a Receiver's right to the bankrupt's goods, prayed for authority to execute a bond of indemnity to the Director General of Railroads. If

the reconsignment of the goods by Nesto at Pittsburgh to Ferri at New York was made pursuant to a bona fide resale thereof by Nesto to Ferri, obviously Nesto's Receiver in bankruptcy could have no right to them. In order, we apprehend, to show that the goods belonged to the bankrupt and therefore to establish a receiver's right to their possession, the Receiver, in his petition to the court for leave to execute the bond in question, averred the following fact:

"The said Romeo Nesto (the bankrupt) *consigned to himself* as R. Ferri, the following cars of merchandise (eight in number) via the Pennsylvania Railroad and are now held by said Pennsylvania Railroad at New York City and said cars contain macaroni, olive oil and other groceries."

The car in controversy was one of the number. At this juncture Nesto absconded.

Assuming it to be a fact on the Receiver's admission that Ferri, the consignee in what purported to be the second transit, was no other than Nesto, the consignee in the first transit, and that the two nominal consignees were one and the same person (but for which we surmise, the Receiver could not have made a valid claim to possession of the bankrupt's property) there at once arose the question whether Nesto ever took delivery of the goods at Pittsburgh, and whether, accordingly, the seller's right to stoppage in transitu was lost at Pittsburgh or continued to New York. This question, as in every case of stoppage in transitu, turns on the fact of delivery.

[2-4] Delivery in the law of sales may be either actual or constructive. Actual delivery consists in giving the buyer, or his accredited agent, the real possession of the goods sold. Constructive delivery comprehends those acts which, although not truly conferring real possession of the goods sold, are held constructione juris equivalent to acts of real delivery. In this sense it includes symbolical or substituted delivery. 35 Cyc. 188, 189; 24 R. C. L. 144, 145, 146. Both actual and constructive delivery, however, contemplate the absolute giving up of the control and custody of the goods on the part of the seller and the assumption of the same by the buyer. Brown v. Dickerson, 2 Marv. (Del.) 119, 121, 42 Atl. 421; Swafford v. Spratt, 93 Mo. App. 631, 67 S. W. 701. Applying this unquestioned rule to the facts in this case, as completed by the Receiver's admission that Ferri and Nesto were but different names for the same person, what do we find as to the fact of delivery?

[5] That there was no actual delivery is not seriously disputed. When the car reached Pittsburgh the carrier notified Nesto of its arrival. Without assuming possession of the same, and, so far as we are shown, without seeing the car, Nesto immediately reconsigned it to himself under a new name at a new destination. From the very nature of the transaction there was no actual delivery to Nesto at Pittsburgh. His reconsignment of the car to himself, although under an assumed name, was a declination by him to accept delivery at Pittsburgh and an affirmation of his intention to accept delivery at New York. Was there constructive delivery? While ordinarily the law would raise a delivery by construction under circumstances which brings the goods within the dominion of the purchaser, In re W. A.

Paterson Co., supra; Diehl, Adm'r, v. McCormick, 143 Pa. 584, 22 Atl. 1033; 24 R. C. L. 146; where he has exercised full control over them by bona fide reconsigning them, the law will not hold a delivery as constructive——that is, the law will not construe as done that which was really not done—in aid of an obviously fraudulent transaction, Rosenthal v. Dessau, 11 Hun (N. Y.) 49.

Therefore we hold that at the time the Macaroni Company notified the carrier at New York of its right to stop the shipment in transitu, delivery, either actual or constructive, had not been made to the buyer, under either his real or fictitious name, and therefore, as against Nesto, the Macaroni Company's right to stoppage in transitu was preserved.

[6, 7] The remaining questions concern rights claimed by the Receiver of the bankrupt under other provisions of the Sales Act of Pennsylvania. The first arises under subsection b of section 57 which defines goods as no longer in transit, if, after their arrival at destination the carrier "acknowledges to the buyer or his agent that he holds the goods on his behalf and continues in possession of them as bailee for the buyer." As there is no averment that the carrier made such acknowledgment, resort to this provision of the statute is without avail. The second question arises under subsection c of section 58 defining goods as no longer in transit "if the carrier or other bailee wrongfully refuses to deliver the goods to the buyer, or his agent in that behalf." This provision is invoked to meet the carrier's refusal to deliver the goods to the Receiver without security to protect itself against liability, inter alia, arising from the notice of the Macaroni Company, previously given, of its right of stoppage in transitu. As this right has been sustained, the carrier's refusal was not wrongful.

The order of the court below is affirmed.