635 A.2d 139

**COMMONWEALTH of Pennsylvania, BOARD OF FINANCE AND REVENUE, Appellant,**

**v.**

**ROSETTA OIL, INC., Appellee.**

Supreme Court of Pennsylvania.

Argued May 4, 1993.

Decided Dec. 17, 1993.

344

Clinton G. Smith, Jr. Deputy Atty. Gen., for appellant.

Leonard Dubin, David M. Kuchinos, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an opinion and order of Commonwealth Court which effectively enjoins the Commonwealth of Pennsylvania, Board of Finance and Revenue (Board) from

placing a lien on the assets of Rosetta Oil, Inc. (Rosetta) during the pendency of Rosetta's petition for review of the Board's order sustaining a liquid fuels tax assessment against Rosetta in the amount of $395,172.60 plus interest.

Rosetta contends that in January, 1988, Meridian Bank, Rosetta's then-lender, asked Rosetta to allow Bell Fuel Company, another customer of Meridian, to use Rosetta's credit to purchase certain fuels from suppliers, including gasoline.[1] It appears that Bell was having financial difficulties and could not otherwise obtain credit with suppliers.

Rosetta agreed to assist Bell and, thereafter, dealt with Bell and three separate but related companies: Bell; Anthony Fuel Company; and, Triangle Petroleum Company. Under the arrangement with Rosetta, drivers for Triangle and Anthony picked up gasoline from a supplier, and the supplier invoiced Rosetta. Rosetta, adding only its costs, invoiced Bell. Either Bell or Meridian paid Rosetta. Rosetta neither received any of the gasoline from any supplier nor sold or delivered any of it to any other party. Bell, itself, did not pick up or deliver the gasoline; however, its comptroller, who was also comptroller for Anthony and Triangle, filed liquid fuels tax reports on a monthly basis for Anthony and Triangle.

Following a field audit, the Department of Revenue determined that Rosetta owed liquid fuels taxes on over 3,200,000 gallons. The Board of Appeals of the Department of Revenue affirmed. Subsequently, the Board also affirmed. Rosetta filed a petition for review of the assessment on March 20, 1992 and that case remains pending before Commonwealth Court. Through it all, Rosetta characterizes its role as that of an accommodation party which had no involvement in the use, delivery or sale of the liquid fuels and that tax reports were filed and taxes paid by the companies.

On July 20, 1992, the Board notified Rosetta's attorneys that Rosetta was required to post security or pay the total tax liability within ten days of the letter. Rosetta responded by filing a petition for special injunction, which was granted by

1. Meridian agreed to hold Rosetta harmless.

Commonwealth Court. The matter was then appealed and heard by this court. We remanded the matter to Commonwealth Court for the filing of an opinion, which was promptly done. The matter is now ready for disposition.

The Board asserts that the grant of the injunction was improper because Rosetta neither demonstrated that it would be irreparably harmed by the denial of the injunction or was likely to prevail on the merits of its appeal. This court will affirm the grant or denial of an injunction unless it is shown that "no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied." *Bell v. Thornburgh*, 491 Pa. 263, 267, 420 A.2d 443, 445 (1980).

■ The Commonwealth Court has the authority under Pa.R.A.P. 1781(c) to grant orders of stay of governmental orders as follows:

[T]he appellate court, or a judge thereof, may grant an order of stay or supersedeas, including the grant of an injunction pending review or relief in the nature of peremptory mandamus, upon such terms and conditions, including the filing of security, as the court or a judge thereof may prescribe.

A party seeking a stay of an order of a governmental unit must, according to *Ernest Renda Contracting Co. v. Commonwealth*, 516 Pa. 320, 532 A.2d 413 (1987), make a strong showing:

(1) that he is likely to prevail on the merits; (2) that without the requested relief he will suffer irreparable injury; (3) that issuance of the stay will not substantially harm other interested parties in the proceedings; and, (4) that issuance of the stay will not adversely affect the public interest.

*Id.*, 516 Pa. at 323, 532 A.2d at 415. *See also Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 502 Pa. 545, 552–53, 467 A.2d 805, 808–09 (1983).

■ The first inquiry is whether Rosetta has made a strong showing that it is likely to succeed on the merits. Rosetta argues two theories. The first theory is that, after the

production of documents by the Board, Rosetta will be able to show that the tax reports filed on behalf of Triangle and Anthony account for all of the gasoline for which Rosetta extended its credit and is now being assessed taxes.[2] The second theory is that the court may decide that Rosetta was merely an accommodation party and not liable for the tax in the first place.[3] Under either theory, Commonwealth Court did not clearly err in concluding that Rosetta made a strong showing that it is likely to succeed on the merits.

■ The second inquiry is whether Rosetta has shown that, unless the injunction is granted, it will suffer irreparable injury. Rosetta argues that it does not have sufficient cash or credit to pay the tax at this time and, because a lien is likely to be considered an event of default by its present lender, imposition of a lien could lead to significant financial problems for the company, causing it to be unable to stay in business. Specifically, Rosetta explained through the affidavit of its president that: Rosetta's limited line of credit with its lender must be used for working capital; if Rosetta was required and permitted to draw on the line of credit to post security, it would be unable to continue in business because it would be unable to purchase sufficient amounts of heating and fuel oil needed for the heating season; Rosetta is unable to obtain credit from any other source; a lien by the Board would be considered an event of default under the loan agreement whereupon the lender may declare the entire unpaid balance of the line of credit and other term loans to be immediately due; and, in such a situation, Rosetta would be forced out of business because it would be unable to obtain credit to continue its heating and fuel oil business. Commonwealth Court did

2. On August 4, 1992, Commonwealth Court ordered the Board to produce certain documents. Although document production will not resolve all issues in this case, it will provide evidence of whether Bell, Anthony or Triangle filed reports or paid liquid fuels taxes on the appropriate amounts of fuel.

3. The record indicates that the Board may already be able to account for the reporting of 1.9 million gallons, of which 1.1 million gallons involved tax exempt sales. One of Triangle's biggest customers, for instance, was New Jersey Bell which is tax-exempt. Other customers included tax-exempt school districts and post offices.

not clearly err in concluding that the requisite injury had been demonstrated.

The next two inquiries are whether a stay will substantially harm the interests of the Board or adversely affect the public interest. First, the lender already has a first lien on Rosetta's assets so that the Board's lien is possibly ineffective. Next, the public has an interest in the continuance of Commonwealth businesses and in the continued supply of heating and fuel oil. Also, if the lower court ultimately decides in favor of Rosetta, Rosetta's business already may have been irreparably harmed if the Board is permitted to impose or execute on a lien on Rosetta's assets.

The Board also claims that Rosetta came to Commonwealth Court with unclean hands because distributions were made to two Rosetta shareholders in the face of the Board's tax assessment. On September 30, 1991, Rosetta distributed $574,000 to two Rosetta shareholders. The record reflects that Rosetta, an "S" corporation, distributed the sums to its shareholders for two reasons. First, the distributions were made, in part, to allow the shareholders to pay federal and state income taxes that became due as a result of Rosetta's income generated during that year.[4] Second, the distributions were made, in part, to allow the shareholders to repay a loan due to Rosetta by an affiliated entity which is owned by the same individuals.[5] The Board has failed to demonstrate unclean hands.[6]

In conclusion, the record reflects that Commonwealth Court properly balanced Rosetta's likely success on the merits and

4. Since Rosetta is an "S" corporation, all of the income is subject to tax at the shareholder level.

5. Rosetta's lender had demanded that this distribution be made by and repaid to Rosetta, thus reducing the receivables due to Rosetta and strengthening its financial base.

6. The Board further states that in the tax year ending September 30, 1991, Rosetta purchased a Mercedes and a Jaguar so that the officers diverted cash or credit to benefit themselves in face of what are alleged to be dire financial circumstances. This fact alone does not clearly support the Board's claim of unclean hands. For example, no mention is made of the date, or the terms, of the purchase of the automobiles.

the probability that Rosetta will be irreparably harmed if the injunction is not issued against the possibility that Rosetta will not succeed on the merits and the unlikely prospect that substantial harm would befall the Commonwealth or the public interest by the issuance of an injunction. The Commonwealth Court did not err in granting the injunction pending its review of the order of the Board.

Affirmed.

LARSEN, J., did not participate in the decision of this case.