ROSETTA OIL, INC., Petitioner,

v.

COMMONWEALTH of Pennsylvania,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 5, 1994.
Decided March 6, 1995.

Leonard Dubin, for petitioner.

Clinton G. Smith, Jr., Deputy Atty. Gen., for respondent.

Before DOYLE and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

FRIEDMAN, Judge.

Rosetta Oil, Inc. (Rosetta) appeals from an order of the Board of Finance and Revenue (Board) denying Rosetta's Petition for Review of the Department of Revenue's (Department) assessment of Liquid Fuels Taxes against Rosetta from January 1988 through July 1988.

Since 1985, Rosetta has engaged in the retail and commercial heating oil, heating and air conditioning business. (Tr. at 42.) [1] In January of 1988, Rosetta was asked by its then-lender, Meridian Bank, to allow Bell Fuel Company (Bell), another Meridian customer in the liquid fuel business, to use Rosetta's credit to purchase certain liquid fuels, including gasoline. (Tr. at 42–45.) Bell was having financial difficulties and could not otherwise obtain credit with suppliers/refiners. (Tr. at 44.) Bell was the "umbrella" company of four other entities, two of which were involved in the sale of gasoline [2]: Anthony Fuel Oil Company, Inc. (Anthony) and Triangle Petroleum Corporation (Triangle).[3] (Tr. at 7–8.) The same person served as comptroller for Bell, Anthony and Triangle. (Tr. at 27 and 41.)

Under the arrangement with Rosetta, drivers for Triangle and Anthony picked up liquid gasolines from a supplier/refiner.[4] (Tr. at 22–23.) The supplier/refiner would then invoice Rosetta. (Tr. at 47–48.) Subsequently, Rosetta, adding only its costs,[5] invoiced Bell and was paid by Bell or Meridian. (Tr. at 45–48.) Rosetta neither received any of this gasoline from the supplier/refiner nor sold or delivered any to Bell, Anthony, Triangle, or any other party. (Tr. at 10, 25–27 and 47.) Bell, itself, did not pick up or deliver the gasoline, but the Bell comptroller did file Liquid Fuels Tax reports on a monthly basis for Anthony and Triangle. (Tr. at 10–12.) This arrangement lasted from January 1988 until July 1988.

During all relevant periods, Triangle held a Liquid Fuels Tax permit issued by the Department. (Tr. at 10.) This permit allowed Triangle to purchase gasoline without paying the Liquid Fuels Tax. Anthony did not hold such a permit but was assigned a Liquid Fuels Tax permit number by the Department. (Tr. at 10–11.) Using their respective permits and permit numbers, Triangle and Anthony filed monthly tax reports with the Department to account for the gasoline sold and delivered. (Tr. at 10–13.)

Following a field audit to determine Rosetta's compliance with the Liquid Fuels Tax Act (Act),[6] the Department determined that Rosetta owed Liquid Fuels Taxes on over 3,200,000 gallons of gasoline. Thus, the Department assessed Rosetta for $395,172.60 in taxes plus interest. (Stipulation of Facts,

---

1. Citations are to the Transcript of Proceedings before the Commonwealth Court sitting pursuant to Pa.R.A.P. 1571(f) on August 11, 1994.

2. The parties usually refer to the liquid fuels taxes as having been assessed on gasoline although it appears that other liquid fuels, such as heating oil, may also have been involved in the transactions at issue. For purposes here, we use the term gasoline but remain aware that other liquid fuels may also be included.

3. Triangle was the main gasoline operator and seller among the companies; however, Anthony also sold gasoline. (Tr. at 8.) Bell, on the other hand, did not sell gasoline. (Tr. at 11.)

4. The refiners and terminal operators from which Anthony and Triangle took delivery of gasoline during the period in issue were Atlantic Refining Company (Atlantic) and Sun Refining

and Marketing Company (Sun). Atlantic was the source of gasoline in January and February of 1988; and, Sun, from February 1988 through July 1988. (Tr. at 9; Stipulation of Facts, Exhibit A.)

5. Rosetta did not make a profit on the gasoline which it invoiced to Bell and Anthony. (Tr. at 45–56.) Although Rosetta's invoices to Bell and Anthony typically charged between one-half cent and one cent per gallon more than the invoice from the supplier/refiner to Rosetta, Rosetta was required to provide and pay for a letter of credit when it agreed to permit Bell to use Rosetta's credit to purchase gasoline. Rosetta also incurred administrative costs in accounting for the gasoline picked up by Anthony and Triangle and in invoicing Bell. (Tr. at 24–26, 45 and 46.)

6. Act of May 21, 1931, P.L. 149, *as amended*, 72 P.S. §§ 2611a–2611z.

Nos. 2–3.) *See Board of Finance and Revenue v. Rosetta Oil, Inc.,* 535 Pa. 343, 635 A.2d 139 (1993). Rosetta appealed this assessment to the Board, contending that Rosetta never distributed or sold this gasoline; rather, Rosetta maintained that this gasoline was part of the "accommodation" it made with Meridian Bank and Bell, and that tax reports were filed and appropriate taxes paid by the other involved companies. The Board disagreed with those contentions and sustained the assessment.

■ Rosetta now appeals to this court [7] and asks us to determine whether an entity that permits another to use its credit to purchase gasoline either has used or has sold and delivered that gasoline under the Act.[8]

Rosetta argues that it did not use or sell and deliver the gasoline at issue here and, thus, is not liable to pay the tax assessed. We agree.

Section 4 of the Act, 72 P.S. § 2611d, imposes a state tax of eight cents per gallon "upon all liquid fuels used or sold and delivered by distributors within this Commonwealth," with various exceptions such as sales by one distributor to another distributor holding a permit under the Act and sales to tax exempt bodies. Section 4 of the Act, 72 P.S. § 2611d (emphasis added), provides in pertinent part:

§ 2611d. Imposition of tax; exemptions and deductions

A permanent State tax of eight cents a gallon, or fractional part thereof, is hereby imposed and assessed upon all liquid fuels *used or sold and delivered* by distributors within this Commonwealth, excepting liquid fuels delivered to the United States Government on presentation of a duly authorized United States Government exemption certificate or other evidence satisfactory to the department ... and excepting liquid fuels delivered to the Commonwealth, [and] every political subdivision. ... The tax herein imposed and assessed shall be collected by and paid to the Commonwealth but once in respect to any liquid fuels.

. . . .

Distributors shall be liable to the Commonwealth for the collection and payment of the tax imposed by this act. The tax imposed by this act shall be collected by the distributor at the time the liquid fuels are used or sold and delivered by the distributor and shall be borne by the consumer. . . .

Further, section 5 of the Act, 72 P.S. § 2611e (emphasis added), entitled "By whom tax is payable," states in pertinent part:

Every distributor *using or delivering* liquid fuels upon which a tax is imposed by this act shall pay the tax into the State Treasury, through the department, in the manner and within the time specified in this act; but whenever liquid fuels are delivered within the Commonwealth by one distributor to another distributor holding a permit under this act, the distributor receiving such liquid fuels shall separately show, in his monthly reports to the depart-

---

7. This court is entitled to the broadest scope of review when considering the propriety of an order of the Board of Finance and Revenue because, although this court hears such cases in its appellate jurisdiction, this court functions essentially as a trial court. *Norris v. Commonwealth,* 155 Pa.Commonwealth Ct. 423, 625 A.2d 179 (1993). Pa.R.A.P. 1571 authorizes this court to rule on the record made before it and on the stipulation of facts made by the parties. Although the stipulation of facts is binding and conclusive upon this court, we may nonetheless draw our own legal conclusions from those facts. *Id.*

8. Rosetta also raises the following issues:
    1. Whether an entity that permits another to use its credit to purchase gasoline is a "distributor" within the meaning of the Act?
    2. Whether an entity that permits another to use its credit to purchase gasoline can be held liable for Liquid Fuels Taxes on gasoline that is delivered by the supplier/refiner to a company using the credit?
    3. Whether the Department is entitled to collect Liquid Fuels Tax more than one time on the same fuel?
    4. Whether the Department engaged in unequal enforcement of a tax statute, in violation of the Fourteenth Amendment to the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution, in assessing a tax more than one time on the same gasoline and by assessing a taxpayer that neither used, sold nor delivered that gasoline?
However, due to our disposition of the first issue, we need not address these other issues.

ment, all such deliveries from each distributor, and shall pay the liquid fuels tax provided for by this act upon such liquid fuels used or sold and delivered by him within this Commonwealth. The distributor making such deliveries shall separately show the same in his monthly reports to the department, and shall thereupon be exempt from the payment of the tax which would otherwise be imposed upon the liquid fuels so delivered. . . .

■ Accordingly, to be responsible for paying the Liquid Fuels Tax, Rosetta must be a distributor [9] who *used* or *sold and delivered* gasoline. Therefore, Rosetta maintains that the transaction for which it has been assessed tax does not fall within the ambit of the Act.

■ The Commonwealth concedes that Rosetta did not *use* the gasoline at issue here. Rather, the Commonwealth, by reference to the sales provisions of the Uniform Commercial Code (U.C.C.),[10] argues that the supplier/refiner *sold and delivered* the gasoline to Rosetta, and Rosetta *sold and delivered* the gasoline to Bell (which was not an exempt distributor). Therefore, the Commonwealth argues that the transactions here

fall within the scope of the Act. However, we agree with Rosetta that the U.C.C. is not applicable here.

The sales provisions of the U.C.C. applies to "transactions in goods" and specifically "does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a *security transaction* . . . ." Section 2102 of the U.C.C., 13 Pa.C.S. § 2102 (emphasis added).[11] Because Rosetta did nothing more than lend its credit in order to permit the sale of gasoline by a supplier/refiner to another customer of Rosetta's lender, this transaction was not a sale under the U.C.C., and we will not look to the U.C.C. to construe the word "sold" in the Act.

■ Where, as here, the words and phrases in a statute are not defined in the Act, the rules of statutory construction require us to construe those words and phrases according to their common and approved usage. The Statutory Construction Act of 1972, 1 Pa.C.S. § 1903. In arriving at the common and approved usage, we may consult statutes, regulations or the dictionary for guidance, although such definitions are not controlling. *Manor Healthcare Corporation v. Lower Moreland Township Zoning Hear-*

9. Whether Rosetta was a distributor under the Act is irrelevant because we ultimately find that Rosetta never "used or sold and delivered" the gasoline at issue here.

10. The U.C.C. deals with sales in sections 2101 through 2725, 13 Pa.C.S. §§ 2101–2725. The Commonwealth specifically cites sections 2401 and 2503(a) of the U.C.C., 13 Pa.C.S. §§ 2401 and 2503(a), in asserting that Rosetta purchased, received, sold and delivered title in the gasoline at issue.

Section 2401 of the U.C.C. provides in pertinent part:

(2) **Place of the delivery of goods.**—Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place, and in particular and despite any reservation of a security interest by the bill of lading:

(i) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment. . . .

Section 2503(a) of the U.C.C. states:

(a) **General Rule.**—Tender of delivery requires that the seller put and hold conforming goods at the disposition of the buyer and give the buyer any notification reasonably necessary to enable him to take delivery. The manner, time and place for tender are determined by the agreement and this division, and in particular:

(1) tender must be at a reasonable hour, and if it is of goods they must be kept available for the period reasonably necessary to enable the buyer to take possession; but

(2) unless otherwise agreed the buyer must furnish facilities reasonably suited to the receipt of the goods.

11. *Section 2102 of the U.C.C. provides:*

Unless the context otherwise requires, this division applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction, nor does this division impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers.

*ing Board,* 139 Pa.Commonwealth Ct. 206, 590 A.2d 65 (1991). Because the statutory requirement, here, is conjunctive, Rosetta must be shown to have both "sold *and* delivered" the gasoline at issue in order to be found liable to pay the tax assessed by the Commonwealth. Sections 4 and 5 of the Act, 72 P.S. §§ 2611d and 2611e.

▬▬ Black's Law Dictionary defines "sale" as a "contract between two parties ... by which the [seller] ... transfers to the [buyer] the title and the possession of property." *Black's Law Dictionary* 1200 (5th ed. 1979). Here, even if it can be argued that title transferred to Rosetta, Rosetta never had possession of the gasoline. Thus, the gasoline was not "sold" to Rosetta.

Furthermore, Black's Law Dictionary defines "delivery" as

> "[the] act by which the res or substance thereof is placed within the actual or constructive possession or control of another.... Actual delivery consists in the giving real possession to the vendee or his servants or special agents.... Constructive delivery is a general term, comprehending all those acts which, although not truly conferring a real possession of the thing sold on the vendee, have been held, by construction of law, equivalent to the acts of real delivery."

*Black's Law Dictionary* 385–86 (5th ed. 1979). No one contends that the gasoline was ever actually delivered to or by Rosetta; but the Commonwealth does argue that constructive delivery occurred. However, constructive delivery like actual delivery "contemplate[s] the absolute giving up of the control and custody of the goods on the part of the seller

and the assumption of the same by the buyer." *In re Nesto,* 270 F. 503 (3rd Cir.1921). Because Rosetta never had control and custody of the gasoline, it could not "deliver" the goods to a buyer. The only entities to receive custody and control of the gasoline from the supplier/refiner were Anthony and Triangle.

Although the supplier/refiner invoiced Rosetta, and Rosetta in turn invoiced Bell, Rosetta did not buy gasoline from the supplier/refiner or sell or deliver the gasoline to Bell. At the request of its lender, Meridian, Rosetta acted only as an accommodating or intervening party, lending its credit to Bell and, consequently, to Triangle and Anthony. It was these purchasers of the gasoline who properly collected and remitted the tax due to the Commonwealth when they sold the gasoline. Therefore, because Rosetta did not use or sell and deliver gasoline, it is not liable for the Liquid Fuels Taxes assessed by the Department here.

Accordingly, we enter judgment as follows.[12]

### ORDER

AND NOW, this 6th day of March, 1995, judgment is entered in favor of Rosetta Oil, Inc., and that judgment shall become final if no exceptions are filed pursuant to Pa.R.A.P. 1571(i).

---

**12.** Because we find that Rosetta did not use or sell and deliver the gasoline at issue here, we need not address the other questions presented.