In re DORADO MARINE, INC., Debtor.

Dorado Marine, Inc., Plaintiff,

v.

Keith Kollenbaum, TLB, Inc., An Indiana Corporation, Peoples Bank, N.A., and Caterpillar Financial Services, Defendants.

Bankruptcy No. 8:04–bk–16765–ALP.
Adversary No. 8:04–ap–00538–ALP.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 3, 2005.

David W. Steen, Tampa, FL, for Debtor.

Denise E. Barnett, Tampa, FL, for Trustee.

### *FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION*

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration in this Chapter 11 reorganization case is a Complaint to Determine Extent, Validity

and Priority of Interests (Doc. No. 1), filed by Dorado Marine, Inc. (the "Debtor"). The Debtor in its Complaint seeks a determination of the interest, if any, of Keith Kollenbaum ("Kollenbaum") in a 40′ Nor' Easter sport fishing boat, Hull Identification Number ELO42010J204 (the "Boat"). It is the contention of the Debtor that even though it completed construction of the Boat and tendered the Boat to Kollenbaum, Kollenbaum refused to accept the delivery and rejected the contract he had with the Debtor for the construction of the 40′ Nor' Easter. Based on these facts, the Debtor seeks a determination by this Court that it has the right to sell the Boat to TLB, Inc. ("TLB") free of any claim or interest in the Boat by Kollenbaum. It is also alleged by the Debtor that Caterpillar Financial Services ("Caterpillar") and Peoples Bank ("Bank") may claim a security interest in some property which was used in the construction of the Boat. The facts relevant to the sole issue, which is whether or not Kollenbaum, the Defendant in this adversary proceeding, rejected the contract that he had with Dorado for the construction of a 40′ Nor' Easter sport fishing boat by refusing to accept delivery as established at the Final Evidentiary Hearing, are as follows.

### Background

When Kollenbaum saw the ad by the Debtor advertising a 40′ Nor' Easter fishing boat that could travel at a top speed of 40 miles per hour, he contacted the President of the Debtor, Bob Lickert ("Lickert"), and expressed his interest to have the Debtor build one for him. It is without any doubt that Kollenbaum wanted to make sure that the Boat would travel at the promised forty miles per hour top speed, and he told Lickert that this feature was extremely important to him because it would enable him to go a certain distance and return home on the same day.

The Debtor through Lickert entered into a purchase and sale agreement on August 7, 2002, with the Defendant Kollenbaum for the sale of the Boat. Initially, the Boat was to be equipped with a single 450C Cummins Diesel engine. However, the parties agreed to modifications from the original specifications to provide for an upgrade to Twin 330hp Cummins Diesel engines. The upgrade from the single 450C Cummins engine to the Twin 330hp Cummins engines would enable the Boat to reach a top speed of at least forty miles per hour, a speed required by Kollenbaum.

After the Boat was constructed it was submitted to its first sea trial. It was determined at the initial sea trial that the Boat was unable to reach the top speed of forty miles per hour. Sometime prior to June 27, 2003, the Debtor replaced the Twin 330hp Cummins engines with two Caterpillar engines with the attempt to achieve Kollenbaum's desired top speed of the Boat. This change was by agreement and memorialized by a hand written agreement, dated June 27, 2003, described as Addendum to Contract (Addendum)(Plaintiff's Exhibit 2). The Addendum also stated that, if the Boat could not reach the speed of thirty-nine miles per hour the Debtor would refund all monies paid by Kollenbaum to the Debtor. The Addendum also set forth an increase in the price of the Boat by $11,000.00. It is without dispute that Kollenbaum paid to the Debtor $148,418.00. The balance remaining under the contract is $11,994.00. The difference in the figures is attributable to $8,700.00 worth of options being removed from the Boat's construction at Kollenbaum's request. Once the Debtor replaced the Cummins with the Caterpillar engines, the Debtor submitted the Boat to another sea trial. The parties agree that at the second sea trial, attended by Kollenbaum and Joe Cascio, owner of George's Marina,

it was clear that the Boat was unable to reach the top speed of forty miles per hour even with the Caterpillar engines. The Debtor in an effort to increase the speed of the Boat, made other modifications to the Boat and the propellers.

The Debtor and Kollenbaum agree that there were three sea trials, but there is a violent disagreement between the parties about when the last and final sea trial took place. However, the parties do agree that Kollenbaum, Joe Cascio and John Bohn, an independent contractor working for the Debtor, participated in the third and final sea trial. The dispute as to the occurrences at the end of the third and final sea trial, and the reason for the filing of this adversary proceeding, is whether or not Kollenbaum rejected the Boat at the conclusion of the third and final sea trial.

In 2003, Kollenbaum filed a nine count Complaint in the Sixth Judicial District Circuit Court for Pinellas County, Florida. On November 12, 2003, the Circuit Judge entered a temporary injunction enjoining the further sale, destruction or modification of the Boat. Following the entry of the temporary injunction, there was further controversy regarding Lickert's conduct in following the Court's order. On July 7, 2004, the Circuit Court conducted a hearing were Lickert testified that he attempted to preserve the Boat, by putting the "finish coat on it or it's going to get water soaked in it." (Debtor's Exhibit 3). The Circuit Court found that the additional work conducted by Lickert violated the state court injunction, and held Lickert in contempt of court. On August 24, 2004, the Debtor filed a Chapter 11 case in this Court. On September 8, 2004, the Debtor filed this adversary proceeding. On October 13, 2004, this Court entered its Order Denying Motion to Abstain (Doc. No. 32), and scheduled a Final Evidentiary Hearing to determine the sole issue being

whether Kollenbaum rejected delivery of the Boat from the Debtor.

On November 2, 2004, this Court entered a Final Judgment as to Defendants Bank, Caterpillar and TLB. (Doc. No. 56). This Court determined that Caterpillar and Bank have perfected security interests in any net proceeds from the sale of the Boat. This Court further ordered that "TLB, Inc. has an equitable interest in the 40' Nor' Easter workboat ..." In addition, "[i]f this Court determines that Defendant Kollenbaum had rejected the delivery of the boat, then Defendant TLB may consummate its purchase of the boat free and clear of any liens and encumbrances of any and all persons. The net proceeds, after paying the cost of completion of the boat, shall be held in the trust account of David W. Steen, P.A. until further order of this Court."

### Final Evidentiary Hearing

The Debtor in his Complaint is seeking the determination of the validity and the extent of interest of the Defendants Keith Kollenbaum, TLB, Bank, and Caterpillar. On October 6, 2004, Kollenbaum filed his Answer, Affirmative Defenses and Counterclaims to Complaint to Determine Extent, Validity and Priority of Interest (Doc. No. 26). Although Kollenbaum asserted nine affirmative defenses, this Court announced that the trial will be limited to the sole narrow issue of whether or not Kollenbaum rejected the delivery of the Boat involved in the controversy.

Prior to taking any testimony at the duly scheduled Final Evidentiary Hearing on October 28, 2004, the other named Defendants, TLB, Bank, and Caterpillar, submitted for this Court's consideration a stipulation in which the Debtor acknowledges the perfected security interest of the Bank and that of Caterpillar, in the assets of the Debtor under general security interest together with the interest of TLB in

the Boat, pursuant to a purchase agreement. The Debtor further announced to this Court that he is willing to stipulate that TLB has an equitable interest in the Boat, to the extent the monies it claims to have paid to the Debtor for the purchase of the Boat in the amount of $235,000.00.

The Debtor also stated however, that in the event that this Court determines that Kollenbaum rejected delivery of the Boat, then the Debtor would consummate the sale of the Boat to TLB free and clear of any and all liens, claims, and encumbrances to any and all persons including Kollenbaum. The Debtor further stipulated that the net proceeds, after paying the cost of completion of the Boat, shall be held in the trust account of David W. Steen, P.A. until further order of this Court.

Counsel for Kollenbaum immediately objected to the stipulation as it related to TLB's interest in the Boat without the presentation of evidence, or consideration of Kollenbaum's asserted counterclaims, affirmative defenses and competing claims to the Boat. This Court sustained Kollenbaum's objection and agreed to approve the stipulation solely as it related to the claims of the Bank and Caterpillar.

### Discussion

Florida Statutes §§ 672.501, 672.502, 672.508, 672.601, 672.602, 672.606, 672.703, 672.706, 672.711, 672.716 are Florida's codification of the Uniform Commercial Code §§ 2–501, 2–502, 2–508, 2–601, 2–602, 2–606, 2–703, 2–706, 2–706, 2–711, and 2–716 respectively. These sections provide that, if goods or tender fail, a buyer may accept or reject the delivery or any portion of it as the buyer wishes. Fla. Stat. ch. 672.601 (2004). Fla. Stat. ch. 672.602 states that, if

the buyer is to decide to reject goods that do not meet the agreement, the rejection must happen within a reasonable time after delivery or tender. Fla. Stat. ch. 672.602 (2004). After a proper rejection, the seller still has the right to cure the improper tender. Fla. Stat. ch. 672.508 (2004). If the buyer rejects goods that conform to the sale agreement, the seller may resell the goods to a second buyer. Fla. Stat. ch. 672.703(4) (2004). In a resale, the second buyer takes the goods free of any rights or claims of the first buyer. Fla. Stat. ch. 672.706(5) (2004).

The Plaintiff testified that Kollenbaum stated on a number of occasions that he wanted Lickert to sell the boat and refund the money that Kollenbaum had already paid. (Tr. p. 84, 121 [1]). The plaintiff contends that Kollenbaum's statements amount to a rejection of the Boat which cancelled the agreement and freed the Plaintiff to resell the Boat to TLB under Fla. Stat. ch. 672.703(4). Kollenbaum contends that he could not have rejected the Boat because under the state statutes rejection can only occur after delivery. Fla. Stat. ch. 672.602(1) provides in pertinent part, "Rejection of goods must be within a reasonable time after their delivery or tender." Kollenbaum argues that there was no delivery to him and, therefore, he cannot have rejected the Boat. To support this claim, Kollenbaum cites *In re Nesto,* 270 F. 503 (3d Cir.1921). In *Nesto,* a buyer in Pittsburgh sent goods to a third party in New York who was actually the same buyer under a different name. The issue was whether or not the seller could use its right to stop the goods in transit after they had arrived in Pittsburgh and had been directed to New York. The court held that the first delivery was not a true delivery

---

1. *In re Dorado,* Case No. 04–16765–8P1, United States Bankruptcy Court for the Middle District of Florida Tampa Division. Tr. is in reference to the Transcript of the Final Evidentiary Hearing, October 28, 2004.

under the U.C.C. The court reasoned that delivery contemplates "the absolute giving up of the control and custody of the goods on the part of the seller and assumption of the same by the buyer." Id. at 506.

Kollenbaum next contends that his statements do not amount to a proper rejection regardless of whether or not delivery occurred. To support this contention, Kollenbaum cites *In re First Hartford Corp.*, 63 B.R. 479 (Bankr.S.D.N.Y. 1986). In *Hartford*, the court held that no valid rejection occurred during a telephone conversation in which the buyer, First Hartford, told the seller to find a different buyer because First Hartford was closing down. The court reasoned this statement was not a valid rejection because it was predicated upon First Hartford closing as opposed to the late delivery and non-merchantability of the goods.

Kollenbaum also cites in his brief *Robinson v. Jonathan Logan Financial*, 277 A.2d 115 (D.C.1971), which supports the idea that simply pointing out a problem with goods is not a valid rejection. In *Robinson*, the District of Columbia Court of Appeals held that no rejection occurred where the buyer of a quantity of women's dresses sent a letter to the seller six months after delivery saying it would not pay. The letter also stated that the buyer had informed the seller of the problem with the dresses on the day of delivery. The court reasoned that this was not a rejection but merely pointing out a problem with the goods. The court seemed to suggest the letter would have been a valid rejection but for the six month gap between the delivery and the date the letter was sent.

Kollenbaum additionally cites *HCI Chemicals (USA) Inc. v. Henkel KGaA*, 966 F.2d 1018 (5th Cir.1992). *HCI* stands for the proposition that a valid rejection must be clear and unambiguous. In *HCI*, the Fifth Circuit Court of Appeals dealt with a sale of chemicals. The buyer alleged that it rejected the chemicals when it stated on more than one delivery occasion that it was holding the seller responsible for damage to the drums containing the chemicals. The court held that the statements made by the buyer were not a clear and unambiguous rejection of the chemical shipments. However, the court let the buyer recover damages from the seller under a theory of breach of warranty.

■ In the instant case, the Plaintiff alleges several occasions where Kollenbaum said he did not want the Boat, but instead wanted his money back. One of these alleged statements was made only three days after the final sea trial. (Tr. p. 84). This statement was definitely within a reasonable time. Further, these statements seem to be factually distinguishable from those in question in *HCI*. In *HCI*, the buyer said that it was holding the seller responsible for the damage to the goods. The buyer in *HCI* never requested its money back as Kollenbaum did in this case. Kollenbaum was much more clear and direct when talking with Lickert than is evident in any of the cases cited by Kollenbaum. Therefore, this Court is satisfied that Kollenbaum did validly reject the Boat after the third and final sea trial.

■ Additionally, this Court holds that there was a delivery before Kollenbaum's rejection. Lickert testified that normal practice for him after final sea trials is to collect money and for purchasers to take the Boat with them. (Tr. p. 86). This Court believes that the final sea trial constituted a delivery under the language of *Nesto*. *Nesto*, 270 F. at 506. In this case, Kollenbaum did not take the Boat with him because the Boat did not conform to what he wanted. The Plaintiff could have continued to attempt to cure the defects in the Boat within a reasonable time and re-

deliver under Fla. Stat. ch. 672.508, but another delivery was never attempted. Since no other attempt to cure or re-deliver the Boat occurred and there is no contention by either party that title ever passed to Kollenbaum, the Plaintiff had all ownership rights in the Boat and was free to sell it after Kollenbaum's rejection. Therefore, TLB can take the Boat free of Kollenbaum's claim under Fla. Stat. ch. 672.706(5).

■ This leaves for consideration what claim, if any, Kollenbaum has since he did not receive the Boat he bargained for and it is without dispute that he paid Dorado $148,418.00. The case law supports and this Court holds that Keith Kollenbaum is entitled to an equitable lien in the amount $148,418.00.

■ Equitable liens are imposed when no other adequate remedy at law exists. *Jones v. Carpenter,* 90 Fla. 407, 106 So. 127 (1925). Before deciding whether or not an equitable lien is neces-sary, this Court must first determine whether or not such a lien is proper under state law. *The Matter of Bob Cooper Inc.,* 65 B.R. 609, 612 (Bankr.M.D.Fla.1986). Under Florida law, an equitable lien can be imposed if either of the following two factors is established: 1) if there is a writ-ten contract that indicates an intention to charge a particular property with an obli-gation, or 2) a court declares that the equitable lien is necessary out of general considerations of justice. *Id., Jones,* 106 So. at 129. Courts should take into consid-eration the relationships of the parties in determining whether an equitable lien is necessary. *See Bob Cooper,* 65 B.R. at 612, *see also In re Chauncey,* 308 B.R. 97, 107 (Bankr.S.D.Fla.2004).

In the instant case, Kollenbaum has paid to the Debtor $148,418.00 for a Boat which Kollenbaum has not received and will not receive because it has been sold to another party. To permit the Debtor to retain the money collected from Kollenbaum and the money from the new buyer would create an unjust enrichment. If Kollenbaum is forced to file a claim for what he has paid as an unsecured creditor, there is no as-surance, and it is highly unlikely, that he will receive 100 percent of his claim. For this reason, this Court is satisfied that allowing the Debtor to sell the Boat to TLB and keep the money paid by Kollenb-aum would create a result that in fairness and justice should not be tolerated. Thus, Keith Kollenbaum is entitled to an equita-ble lien in the amount of $148,418.00 on all net proceeds of any sale of the subject boat by the Debtor.

A separate final judgment shall be en-tered in accordance with the foregoing.

### FINAL JUDGMENT

THIS CAUSE came on for consider-ation upon the Court's own Motion for the purpose of entering a Final Judgment in the above-captioned adversary proceeding. The Court has considered the record and finds that this Court has entered its Find-ings of Fact, Conclusions of Law and Memorandum Opinion. Therefore, it ap-pears appropriate to enter this Final Judg-ment.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that Final Judgment be, and the same is hereby, entered in favor of the Plaintiff, Dorado Marine and against the Defendant, Keith Kollenbaum with respect to rejection of the 40′ Nor′ Easter sport fishing boat. It is further

ORDERED, ADJUDGED AND DE-CREED that Final Judgment be, and the same is hereby entered in favor of the Defendant, Keith Kollenbaum and against the Plaintiff with respect to Keith Kollenb-aum's claim in the amount of $148,418.00.

Keith Kollenbaum is entitled to an equitable lien in the amount of $148,418.00 on all net proceeds of any sale of the subject boat by the Debtor.