771 A.2d 721

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Kelvin X. MORRIS, Appellee.**

Supreme Court of Pennsylvania.

Argued May 3, 2000.

Decided April 20, 2001.

2

Flaherty, C.J., filed joining concurring opinion.

Castile, J., concurred with opinion.

Zappala and Saylor, JJ., concurred in result.

4

12

Hugh Burns, Philadelphia, for Commonwealth

Billy H. Nolas, Philadelphia, for Kelvin X. Morris.

Before: FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

CAPPY, Justice.

This is a direct appeal from an order of the trial court granting appellee's motion for a stay of execution. We granted review of this matter in order to determine whether the trial court had jurisdiction to enter the stay and to set forth the appropriate standard of review this court should employ in reviewing stays of execution. The Commonwealth urges this court to reverse the order of the trial court on the basis that the trial court was without authority to enter the stay of execution outside the parameters set forth in 42 Pa.C.S. § 9545(c). We agree with the Commonwealth and accordingly, vacate the stay of execution.

A brief synopsis of the procedural history of the case is necessary to understand the disposition of this matter.[1] On November 30, 1983 a jury convicted appellee, Kelvin X. Morris, of first-degree murder and robbery. Following a penalty phase hearing, the jury sentenced him to death. New counsel was appointed and on direct appeal, this court affirmed. *Commonwealth v. Morris*, 522 Pa. 533, 564 A.2d 1226 (1989). On April 2, 1990, appellee filed his first PCRA petition. New counsel was appointed and the PCRA court denied relief on January 18, 1995. On appeal, this court affirmed. *Commonwealth v. Morris*, 546 Pa. 296, 684 A.2d 1037 (1996). On December 30, 1996, appellee filed a second PCRA petition. New counsel was appointed[2] and filed an amended petition. While appellee's second petition was pending before the lower court, the Governor signed a death warrant scheduling appellee's execution for January 27, 2000. Appellee filed a Motion for a Stay of Execution with the PCRA court. On December 21, 1999, the PCRA court denied appellee's second PCRA petition on the basis that it was untimely. However, on that

1. A full factual history of the case can be found at *Commonwealth v. Morris*, 522 Pa. 533, 564 A.2d 1226 (1989).

2. An attorney from the former Center for Legal Education, Advocacy & Defense Assistance (CLEADA), who is now with the Federal Court Division of the Defender Association (FCDDA), agreed to represent appellee.

14

same date, the court granted appellee's motion for a stay of execution.

Following the trial court's orders, the Commonwealth filed an Emergency Petition for Expedited Appellate Review of Illegal Stay Order with this court. This court noted probable jurisdiction and scheduled oral arguments on the trial court's order granting the stay of execution. Specifically, we directed that the parties address this court's jurisdiction to review the trial court's order, whether 42 Pa.C.S. § 9545(c) establishes the exclusive means by which a stay of execution can be granted in post-conviction matters, and the validity of the stay entered by the trial court in the instant case. The Commonwealth's primary argument is that section 9545(c) provides the sole means by which a stay can be granted. Appellee responds, *inter alia*, that section 9545 is unconstitutional, or in the alternative, that section 9545 cannot usurp the court's inherent power to grant a stay.

In reviewing these issues we must first consider whether we have jurisdiction to review the stay of execution. If we do have jurisdiction, we will next address whether section 9545(c) survives the constitutional challenges to its validity. If section 9545(c) is constitutional, we will consider the Commonwealth's claim that section 9545(c) establishes the exclusive means by which a stay can be entered in a case on collateral review. We will then enumerate guidelines for both applicants and courts to follow when requesting and reviewing stay applications. And finally, we will speak to the validity of the stay entered in the case herein.

█ The threshold question in this case is whether this court has jurisdiction to review the trial court's order granting the stay of execution. The Commonwealth asserts that this court has jurisdiction, since an order staying an execution is a form of injunctive relief and is therefore appealable as of right, even if interlocutory, pursuant to Pa.R.A.P. 311(a)(4). Alternatively, the Commonwealth asserts that this court has jurisdiction to review the stay order as a collateral order pursuant to Pa.R.A.P. 313. Finally, the Commonwealth as-

serts that even if this court is without jurisdiction pursuant to either Pa.R.A.P. 311 or 313, then we should assume extraordinary jurisdiction of this claim pursuant to 42 Pa.C.S. § 726.

Appellee responds that the order granting the stay of execution is an interlocutory order, and as such, the Commonwealth had no right to appeal the order and this court is without jurisdiction to hear the appeal. Appellee points out that the stay did not grant final relief on the PCRA petition nor did it leave the Commonwealth out of court. Rather, the Commonwealth was not harmed in any way by the entry of the stay order and the regular appeals process should be followed in this case.[3,4]

The Commonwealth's argument that the stay order should be treated as either an injunction or mandamus action has some appeal since that is how federal courts and other states have opted to treat stays of execution for jurisdictional purposes. *In re Moser,* 69 F.3d 690 (3rd Cir.1995)(court has jurisdiction to consider stay of execution, since the effect of a stay is injunctive in nature; jurisdiction is also appropriate as an exercise of mandamus authority under the All Writs Act, 28 U.S.C. § 1651(a)); *see also Franklin v. Francis,* 144 F.3d 429, 432 (6th Cir.1998); *Zant v. Dick,* 249 Ga. 799, 294 S.E.2d 508 (1982). Likewise, Pennsylvania courts have treated stay orders as preliminary injunctions under limited circumstances. *Blackwell v. Commonwealth, State Ethics Commission,* 523 Pa. 347, 567 A.2d 630 (1989); *Chestnut v. Pediatric Homecare of America,* 420 Pa.Super. 598, 617 A.2d 347 (1992). In order to determine whether a stay order should be treated as a preliminary injunction, the court must make a determination

3. Appellee also raises numerous arguments regarding the trial court's disposition of the underlying petition, i.e. that the petition was timely and the issues had merit. We point out that this is not the appropriate time to address these issues, as the only order that we are reviewing at this time is the trial court's grant of a stay of execution. These issues are more appropriately addressed at the time we review appellee's appeal from the denial of his PCRA petition, which was subsequently filed with this court.

4. We do not directly respond to appellee's arguments, since as discussed *infra,* we can exercise jurisdiction over the instant matter.

16

of whether the stay order has the effect of dismissal of the case or permanent denial of the requested action. *Chestnut,* 617 A.2d at 349. Notwithstanding the conclusions of our sister jurisdictions and the fact that we have treated stays as injunctions in the past, we do not believe that this is the appropriate manner to consider the instant stay. First, the outcome of the inquiry set forth in *Chestnut* is discretionary, and thus, can have varying results. Second, and more importantly, the Rules of Appellate Procedure prescribe a mechanism for review of stay orders.[5] Thus, we will review the provisions of Chapter 17 of the Rules of Appellate Procedure in order to determine whether jurisdiction is granted pursuant to those rules.

Normally, stay orders, including appellate review of stay orders, are governed by Chapter 17 of the Rules of Appellate Procedure. The first two rules of Chapter 17 set forth the general effect of an appeal and include the right of the trial court "to take such action as may be necessary to preserve the status quo." Pa.R.A.P. 1701(b)(1). Rule 1702 enumerates the procedures for reviewing a stay ancillary to appeal, including an appeal from a stay following the filing of a notice of appeal. Pa.R.A.P. 1702(a). In most instances, a stay of execution would be appealable pursuant to this rule, since the trial court would be consistent in its ruling, i.e., denying both the petition for collateral relief and the stay. Thus, the party filing the notice of appeal would be the same as the party appealing the stay and this court could review the stay order pursuant to Rule 1702(a) once the notice of appeal was filed. However, cases will arise, similar to the case herein, where a stay order is appealed before a notice of appeal is filed.[6] For example, in this case, the trial court's rulings were inconsistent—it denied the petition for relief, but granted the stay of execution. Therefore, the party appealing the stay

5. We similarly reject the Commonwealth's urgings to treat this as a collateral order pursuant to Pa.R.A.P. 313.

6. Indeed, circumstances may arise where a party requests review of the stay order before the PCRA court has even reviewed the underlying petition. Under the current rules, there is no mechanism for immediate review of such stay orders.

was not the same as the party filing the notice of appeal. This inconsistent ruling resulted in the appeal from the stay order before the notice of appeal was filed from the PCRA order.[7] Accordingly, jurisdiction cannot be conferred pursuant to Rule 1702(a).

Similarly, jurisdiction cannot be conferred by the other rules in Chapter 17. Rule 1702(b) provides for review before the filing of a petition for allowance of appeal or permission to appeal from an interlocutory order based upon the recognition that there may be a time lapse between the lower court's order granting or denying the stay and the filing of the petition for allowance of appeal or permission to appeal. Comment to Pa.R.A.P. 1702(b). In this case, the appellee has not filed and will not be filing a petition for allowance of appeal or permission to appeal, since his appeal of the under-lying matter is directly to this court pursuant to 42 Pa.C.S. § 9546(d)(suspended August 11, 1997, reinstating subsection (d) from the 1988 Act).

Rule 1702(c) creates the right to directly appeal a stay to this court in conjunction with Rule 3315, giving our court the right to review the grant or denial of a stay order. *Common-wealth v. Martorano,* 535 Pa. 178, 634 A.2d 1063, 1065 (1993); *Reading Anthracite Co. v. Rich,* 525 Pa. 118, 577 A.2d 881, 883 (1990). However, that review is limited to stay orders ruled upon by *intermediate courts.* In this case, there was no involvement by any intermediate court, nor would there ever be any involvement by an intermediate court, since the appeal in capital cases is directly to this court. Similarly, Rule 1761 provides a vehicle for this court to enter a stay in a capital matter, but that Rule is limited to cases on direct appeal from the judgment of sentence pursuant to 42 Pa.C.S. § 9711 and does not apply to petitions for collateral review. Rules 1731–35 provide for stays for ancillary relief in civil matters. How-ever, these rules cover only specific civil matters, i.e. payment

7. The appeal from the order granting the stay of execution was filed on January 4, 2000, but the notice of appeal on the underlying petition was not filed until January 12, 2000. That petition is currently pending before us.

of money and domestic matters, and do not encompass stays of death warrants. As the above discussion illuminates, Chapter 17 fails to provide us with an avenue to review the instant stay. We decline to distort either the language or purpose of these rules to grant jurisdiction over this matter. Rather, we now review whether the exercise of extraordinary jurisdiction may be appropriate in these limited circumstances as that is the only remaining means by which we can exercise jurisdiction over this matter.[8]

■ This court's exercise of extraordinary jurisdiction should be used sparingly. *See Washington County Commissioners v. Pennsylvania Labor Relations Board,* 490 Pa. 526, 417 A.2d 164, 167 (1980). Pursuant to 42 Pa.C.S. § 726, we may "in any matter pending before any court or district justice of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause justice to be done." We have noted that in a particular case it may be appropriate to assume jurisdiction under section 726 in order to conserve judicial resources, expedite the proceedings and provide guidance to the lower courts on a question that is likely to recur. *Commonwealth v. Martorano,* 535 Pa. 178, 634 A.2d 1063, 1073, n. 6 (1993). Additionally, "the presence of an issue of immediate public importance is not alone sufficient to justify extraordinary relief. . . . [W]e will not invoke extraordinary jurisdiction unless the record clearly demonstrates petitioner's rights." *County of Berks v. Pennsylvania Labor Relations Board,* 544 Pa. 541, 678 A.2d 355, 359 (1996) (citation omitted).

This issue is likely to recur, as motions to stay executions are routinely filed as part of a petition for collateral relief in

8. We propose that the Rules be amended to provide for this court's immediate review of stay orders. Similar to the effect of the interplay between Pa.R.A.P. 1702(c) and 3315, a rule should be drafted to provide a vehicle for this court's direct review of grants or denials of stay orders in collateral capital cases without the requirement that a notice of appeal be filed to this court before review of the stay order is proper. Accordingly, we refer this matter to the Appellate Rules Committee.

cases brought under the PCRA. *See* Pa.R.Crim.P. 1509(A)(1). Moreover, for the reasons discussed below, we find that the trial court exceeded the bounds of its authority in granting the instant motion to stay execution and the Commonwealth has demonstrated its rights in this matter, making it proper for this court to exercise extraordinary jurisdiction. Accordingly, we assume jurisdiction over the instant matter pursuant to 42 Pa.C.S. § 726 and proceed to examine the argument that 42 Pa.C.S. § 9545 is unconstitutional.

The legislature has prescribed the procedure for entering a stay in post-conviction proceedings as follows:

(c)Stay of execution.—

(1) No court shall have the authority to issue a stay of execution in any case except as allowed under this subchapter.

(2) Except for first petitions filed under this subchapter by defendants whose sentences have been affirmed on direct appeal by the Supreme Court of Pennsylvania between January 1, 1994, and January 1, 1996, no stay may be issued unless a petition for postconviction relief which meets all the requirements of this subchapter has been filed and is pending and the petitioner makes a strong showing of likelihood of success on the merits.

(3) If a stay of execution is granted, all limitations periods set forth under sections 9574 (relating to answer to petition), 9575 (relating to disposition without evidentiary hearing) and 9576 (relating to evidentiary hearing) shall apply to the litigation of the petition.

42 Pa.C.S.A. § 9545(c). A stay properly entered pursuant to section 9545 may remain in effect through the completion of the proceedings. Pa.R.Crim.P. 1509(A)(2).

Appellee asserts that section 9545 is in direct conflict with Art. V, § 9 of the Pennsylvania Constitution and 42 Pa.C.S. § 9546(d), which provide for an absolute right to appeal. Specifically, appellee asserts that the requirements of section 9545 abrogate the right to appeal pursuant to Pa. Const. Art.

V, § 9 [9], since a warrant of execution may be outstanding at the time the PCRA petition is denied and thus, if a stay of execution is not granted an appellant may be denied adequate appellate review before he is executed. Alternatively, appellee argues that section 9545 violates the separation of powers doctrine as it impermissibly interferes with this court's rule-making authority as set forth in Art. V, § 10 of the Pennsylvania Constitution. Specifically, appellee argues that this section conflicts with Pa.R.A.P. 1701(b)(1) and Pa.R.Crim.P. 1507 and 1509. '

Appellee's first argument is without merit, since section 9545 does not unreasonably interfere with appellee's right of appeal. We acknowledge that appellee's argument may have superficial appeal, since it might appear that appellate review cannot be accomplished, unless a stay of execution is granted. However, appellee's argument overlooks the fact that constitutional rights are not absolute and the legislature may place reasonable restrictions on constitutional rights. [10] *Commonwealth v. Peterkin,* 554 Pa. 547, 722 A.2d 638, 642 (1998). In *Peterkin,* this court concluded that the PCRA time limitations provided a "reasonable opportunity for those who have been wrongly convicted to demonstrate the injustice of

9. Art. V, § 9 provides that:

There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.

10. Although appellee does not have a constitutional right to collateral review, he does have a constitutional right to appeal from a court of record to an appellate court. Pa. Const. Article V, § 9. Similarly, the legislature has provided a right to appeal in cases on collateral review. 42 Pa.C.S. § 9546(d). Thus, where these rights have been conferred, it would be insincere for us to conclude that the right to appeal can be limited on the basis that there is no constitutional right to collateral review in the first instance. *See Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 699–700 (1998)(while the Sixth Amendment does not provide a federal right to counsel in post-conviction proceedings, procedural rule in Pennsylvania provides for appointment of counsel in first PCRA proceedings and this right to counsel necessarily includes a concomitant right to effective assistance of counsel).

their conviction," and thus, struck "a reasonable balance between society's need for finality in criminal cases and the convicted person's interest." *Id.* at 643.

Similarly, the United States Supreme Court has recognized that statutes, rules and precedents, which narrow the discretion of the lower courts when reviewing a petition for habeas corpus relief, are reasonable so long as they exist within constitutional constraints and balance the objectives of maintaining the court's freedom to issue the writ against a state's interest in finality. *Lonchar v. Thomas,* 517 U.S. 314, 322–23, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996). In reviewing the reasonableness of a court's limited review of a habeas corpus petition and a stay related thereto, the United States Supreme Court set forth guidelines which it believed adequately protected the interest of both parties in a habeas corpus proceeding in *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). The federal standards are helpful in assessing whether the limitations placed upon a court's review of a petition for post conviction relief and a stay related thereto by section 9545 adequately protect appellee's right to appeal.

In *Barefoot,* the district court denied the petition for habeas corpus. On appeal, the Court of Appeals for the Fifth Circuit gave the parties an unlimited opportunity to brief and argue the merits as they saw fit. *Id.* at 886, 103 S.Ct. 3383. Following which, the court concluded that since the petition had no substantial merit, a stay should be denied. The Court granted certiorari to consider, *inter alia,* whether the Court of Appeals was obligated to decide the appeal on its merits and in the usual course, stay the execution pending such disposition. *Id.* at 888, 103 S.Ct. 3383. The Court also set forth the "appropriate standard for granting or denying a stay of execution. . . ." *Id.* at 887, 103 S.Ct. 3383.

Initially, the Court explained that a stay of execution is an extraordinary remedy, which should only be granted in extreme cases. *Id.* The primary avenue for review is the direct appeal, and when that process has ended, "a presump-

tion of finality and legality attaches to the conviction and sentence." *Id.* Towards this end, courts must isolate the exceptional cases where constitutional error requires action as swiftly and orderly as the procedures will allow. *Id.* at 888, 103 S.Ct. 3383.

The Court then assessed the Circuit Court's actions. The Court established that summary procedures, such as those employed by the intermediate court, could be adopted for ruling on stays, so long as the defendant had adequate notice that his opportunity will be limited. *Id.* at 889–90, 103 S.Ct. 3383 (*citing Garrison v. Patterson*, 391 U.S. 464, 88 S.Ct. 1687, 20 L.Ed.2d 744 (1968)). In addition, where an applicant established probable cause for an appeal, he must be afforded an opportunity to address the underlying merits of the appeal. *Id.* at 889, 103 S.Ct. 3383. Based upon these considerations, the court concluded that the Circuit Court's practice of denying stays, unless the applicant made a showing of success on the merits, comported with these requirements.

However, the Court implied that the Circuit Court's procedure was barely sufficient and went on to enumerate general guidelines for all lower courts to follow "for fair and efficient consideration of these appeals," which would "allow a decision on the merits of an appeal accompanying the denial of a stay." *Id.* at 892, 103 S.Ct. 3383. The Court explained that Congress had fashioned the requirement for a petitioner to obtain a certificate of probable cause to facilitate the process of separating the meritorious from the frivolous claims. A meritorious claim exists where the petitioner has made a "substantial showing of the denial of a federal right" and a court should issue a certificate of probable cause in those instances. *Id.* at 893, 103 S.Ct. 3383. Likewise, where a certificate of probable cause has issued, a stay should be granted pending disposition of the appeal in order to prevent the case from becoming moot. *Id.* at 893–94, 103 S.Ct. 3383.

Since that time, the Court has explained that *Barefoot* delineated the general guidelines governing habeas corpus review and stays pursuant thereto. *Lonchar*, 517 U.S. at 319,

116 S.Ct. 1293. But where the matter involves a second or successive petition, a different situation may be presented since it is more likely that the applicant has filed repeated petitions in an attempt to delay the proceedings. *Id.* at 321, 116 S.Ct. 1293. In other words, the court's discretion may be more limited and the procedures more cursory in a second or successive collateral proceeding.[11]

 Most recently, the Court once again reviewed the "substantial showing" requirement from *Barefoot* in *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). The Court explained that although this requirement was codified at 28 U.S.C. § 2253,[12] the standard set forth in *Barefoot* was still pertinent to the analysis.

> [I]n order to obtain a certificate of appealability under § 2253 a habeas petitioner must make a strong showing of the denial of a constitutional right, a demonstration that under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."

*Id.* at 1603–04.[13] Similarly, where the petition is dismissed on procedural grounds, the question becomes whether jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 1604. Thus, in evaluating whether section 9545(c) places reasonable limitations on a court's review of a petition for post conviction relief and adequately protects appellee's right to appeal, that section

---

11. We note that this is not a first petition for collateral review. Therefore, our holding is limited to a second PCRA petition, and we express no view at present regarding first PCRA petitions.

12. *Lonchar* was filed on April 1, 1996 and the amendments to § 2253 did not become effective until April 24, 1996.

13. Although a certificate of appealability is not the same as an application for stay, the federal courts follow the same guidelines for reviewing both petitions. *Lonchar*, 517 U.S. at 319, 116 S.Ct. 1293 ("We have before us a Court of Appeals order that vacates a stay, not an order to dismiss the habeas petition. We believe, however, that this fact makes no difference. That is, the Court of Appeals order vacating the stay is lawful only if dismissal of the petition would have been lawful.").

must be examined in the context of the number of petitions the applicant has previously filed. In addition, the limitations are reasonable so long as the applicant has notice of the limitation and the trial court can enter a stay where the applicant has shown probable cause to proceed further.

Applying these standards to the instant case, the limitations placed upon the court's review of a post conviction petition by section 9545(c) are entirely reasonable. This is appellee's second petition for post conviction relief and therefore, the potential that appellee is merely using the process to delay the execution of his sentence is greater. Likewise, the state's interest in finality is more compelling. Thus, keeping in mind that this is appellee's second petition for collateral review, we now review the specific requirements of section 9545(c) for the purpose of resolving whether they place reasonable limits on appellee's right of appeal in second or subsequent petitions for collateral relief.

The first requirement of this section provides that the petition for collateral relief must meet "all the require-ments of this subchapter." 42 Pa.C.S. § 9545(c)(2). This requirement necessarily includes timely filing pursuant to section 9545(b) and is no more than a threshold jurisdictional requirement.[14] As discussed above, in *Peterkin*, this court explained that the time bar is a jurisdictional requirement. More recently, we explained that "[j]urisdictional time limits go to a court's right or competency to adjudicate a controver-sy." *Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214, 220 (1999). Where a court is without jurisdiction it is without power to act and thus, any order that it issues is null and void. *DeCoatsworth v. Jones*, 536 Pa. 414, 639 A.2d 792, 796 (1994);

14. It appears that the legislature intended that in order for a stay to be granted, the underlying petition must also meet the pleading and proof requirements as set forth in 42 Pa.C.S. § 9543. However, for purposes of review, it is most important that the petition be timely filed since that is a threshold jurisdictional requirement. Moreover, we can envision circumstances in which requiring the court to review the underlying petition to determine whether it complies with section 9543 may interfere with a constitutional right, since time constraints on both the parties and the courts may make it unreasonable to require that the petition be reviewed before the stay can be granted.

*Smith v. Gallagher,* 408 Pa. 551, 185 A.2d 135, 145 (1962) *overruled on other grounds by Application of Biester,* 487 Pa. 438, 409 A.2d 848 (1979); 1 Standard Pennsylvania Practice 2d, § 2:59 (1995). Following this logic, a stay of execution should be granted only where a timely petition is filed, since without a timely filed petition, the trial court is without competency to entertain the matter before it, including the application for a stay of execution. Accordingly, the first requirement of section 9545(c) is reasonable.[15]

Section 9545 also requires that the petition "has been filed and is pending" before the court. 42 Pa.C.S. § 9545(c)(2). This requirement is reasonable, since it is axiomatic that motions cannot occur in a vacuum—there must be an action pending before the court in order to invoke the jurisdiction of the court.[16] Section 9545 merely clarifies this rule and provides that a stay application cannot be considered unless a collateral review action is pending before the court.

Lastly, section 9545(c)(2) requires that "the petitioner makes a strong showing of likelihood of success on the merits." This language closely tracks the language of the federal habeas corpus statute, which was amended following *Barefoot* and provides that a certificate of appealability should only issue where the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253.

15. Similarly, federal courts decline to entertain a habeas corpus petition unless certain prerequisites are met. For example, in most instances, federal courts require the applicant to exhaust state remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b)(1); *Castille v. Peoples,* 489 U.S. 346, 349, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); *Pitchess v. Davis,* 421 U.S. 482, 486, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975).

16. We recognize that the United States Supreme Court has determined that a petition for habeas corpus need not always be filed before the district court can entertain a stay application. *McFarland v. Scott,* 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994)(stay could be granted where necessary to give effect to the right to counsel). Accordingly, although this is not the appropriate time to discuss the scope of the "pending" requirement, we merely note that this opinion does not foreclose the possibility that situations may arise where the requirement that a petition is to be filed and pending at the time the stay application is reviewed may interfere with the constitutional right to appeal.

26

In reviewing whether this requirement is reasonable, it must be noted that this is not a direct capital appeal. Indeed, stays of execution are granted as a matter of course in direct appeals pursuant to Pa.R.A.P. 1761. Rather, collateral relief is an extraordinary remedy and a stay should only be entered in the exceptional circumstances where the applicant has established probable cause for the appeal. *Barefoot,* 463 U.S. at 888–89, 103 S.Ct. 3383. Accordingly, Section 9545(c) is reasonable, since a stay will be granted in those instances where the petitioner has demonstrated a likelihood of success on the merits.

Both the court and the parties in this case had adequate notice that these limitations were placed on the applicant's right to a stay, since these limitations were codified and published at 42 Pa.C.S. § 9545 and became effective on January 16, 1996. Appellee did not file his petition until December 30, 1996, nearly a year after the changes to this section became effective. More importantly, once the PCRA court denied the PCRA petition, appellee still had the right to appeal and file a stay of execution to this court. Although section 9545 may have the effect of expediting review of an applicant's appeal, such limitations are reasonable in light of the competing interests between the appellee's need for review and the state's interest in finality. *See Peterkin,* 722 A.2d at 643; *see also Lonchar v. Thomas,* 517 U.S. 314, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996); *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). Section 9545(c) weighs these interests and allows a court to enter a stay of execution in the event that the applicant demonstrates a likelihood of success on the merits. Accordingly, this section does not unreasonably interfere with appellee's right to appeal.

We must next review appellee's constitutional challenge to this section on the basis of the separation of powers doctrine. The doctrine of separation of powers is based upon the longstanding recognition that the powers of the three branches of government—judicial, legislative and executive—

are coequal and distinct from one another. *Commonwealth v. Sutley,* 474 Pa. 256, 378 A.2d 780, 782 (1977). As such, the branches should be kept separate, distinct and independent of one another. *Id.* at 783. "Thus, it necessarily follows that any encroachment upon the power of one of the branches by the action of another of the branches is offensive to the fundamental scheme of our government." *Id.*

In 1968, the legislature granted this court exclusive rulemaking authority in Article V, § 10 of the Pennsylvania Constitution. This provision states that:

> (c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

Pa. Const. Art. V, § 10(c). This provision outlines the scope of this court's rulemaking authority by both defining the extent of its power and placing limitations on its power. For example, it grants the judiciary the exclusive power to establish rules of procedure for state courts, *In re 42 Pa.C.S. § 1703,* 482 Pa. 522, 394 A.2d 444, 448 (1978), yet limits the rulemaking power by requiring that the rules cannot "affect the right of the General Assembly to determine the jurisdiction of any court...." In *In re 42 Pa.C.S. § 1703,* we explicitly rejected that the legislature may have concurrent power in this arena. *Id.; see also* Pa. Const. Art. V, § 10.

Thus, under this framework, in determining whether section 9545 violates the separation of powers doctrine, the inquiry is whether section 9545 establishes a rule of procedure which state courts must follow. The Commonwealth argues that section 9545 does not violate the separation of powers doctrine, since the section falls within the jurisdictional exception to our procedural rulemaking authority. We cannot agree.

Section 9545 is entitled "Jurisdiction and Proceedings." Subsection (a) provides that original jurisdiction for a proceeding under this subsection is in the court of common pleas. 42 Pa.C.S. § 9545(a). Subsection (b) prescribes the time for filing a petition for post-conviction relief and has been interpreted to be a jurisdictional requirement, consistent with the title of this section. 42 Pa.C.S. § 9545(b). In other words, where a petition is untimely, the court is without jurisdiction to entertain the merits of the petition. *Fahy*, 737 A.2d at 220; *Commonwealth v. Banks*, 556 Pa. 1, 726 A.2d 374, 376 (1999); *Peterkin*, 722 A.2d at 641. These first two subsections clearly relate to the jurisdiction of the court and thus, do not fall within the exclusive procedural rulemaking power of this court pursuant to Art. V, § 10.

Unlike the prior two sections, subsection (c), the subsection at issue in this case, demarcates the authority of the court to enter a stay once jurisdiction is properly entertained. We have explained that authority and jurisdiction are not synonymous:

> Jurisdiction and power are not interchangeable although judges and lawyers often confuse them. . . . Jurisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs. Power, on the other hand, means the ability of a decisionmaking body to order or effect a certain result.

*Delaware River Port Authority v. Pennsylvania Public Utility Commission*, 408 Pa. 169, 182 A.2d 682, 686 (1962); *see also Riedel v. Human Relations Commission of the City of Reading*, 559 Pa. 34, 739 A.2d 121, 124 (1999). The first part of

subsection (c) provides that "no court shall have the *authority* to issue a stay of execution except as allowed under this subchapter." 42 Pa.C.S. § 9545(c)(1)(emphasis added). The next part provides when a stay can properly be entered—when the petition complies with the requirements of this subchapter, is pending, and petitioner makes a strong showing of likelihood of success on the merits. 42 Pa.C.S. § 9545(c)(2). This provision describes under what circumstances the court can effect a certain result—the entry of the stay—and thus, addresses the *authority* of the court to enter the stay rather than the jurisdiction of the court to entertain the stay application. *Delaware, supra.* Accordingly, the Commonwealth incorrectly asserts that this subsection falls outside the parameter of the rulemaking authority of this court on the basis that it addresses the jurisdiction of the courts of this Commonwealth.

Rather, § 9545 falls outside the parameter of Art. V, § 10 for entirely different reasons. Both parties ignore the fact that the threshold determination in reviewing whether a particular statute interferes with our rulemaking authority granted in Art. 5, § 10 must be whether the section is procedural or substantive in nature, given that we have exclusive rulemaking authority only over procedural law. *See In re 42 Pa.C.S. § 1703, supra.* The limitation placed on the legislature's power by Art. V, § 10(c) does not affect its ability to address the substantive law in a particular area, it merely limits the legislature's authority over procedural law. "The rulemaking power of this court is not for the purpose of defining new rights of litigants but rather to provide the procedure by which established rights are to be effectuated." *Commonwealth v. Fowler,* 451 Pa. 505, 304 A.2d 124, 127 (1973). As a general rule, substantive law is that part of the law which creates, defines and regulates rights, while procedural laws are those that address methods by which rights are enforced. *Morabito's Auto Sales v. Commonwealth, Department of Transportation,* 552 Pa. 291, 715 A.2d 384, 386 (1998); *see also Commonwealth v. Fisher,* 559 Pa. 558, 741 A.2d 1234 (1999). Although the demarcation between substance and

procedure may be difficult to determine, such a determination is necessary to answer a separation of powers question. *Morabito's.*

In reviewing section 9545(c), we acknowledge that the legislature appears to be setting forth the process for enforcing the right to a stay as well as regulating the substantive right to a stay. However, a closer inspection reveals that section 9545 merely defines the appropriate circumstances for securing the substantive right, i.e., the entry of the stay of execution. Although the legislature is not "creating" the right to a stay, it is clearly defining the parameters for the grant of the stay. Section 9545 does not set forth the procedure to enforce the substantive right; rather, it outlines for the defendant under what circumstances he has a right to a stay in collateral proceedings. Thus, this section is substantive, rather than procedural in nature, and it is axiomatic that section 9545(c) does not violate Art. V, § 10, since that provision applies only to this court's exclusive **procedural** rulemaking authority.

We next address appellee's argument that section 9545 cannot provide the sole means for the entry of a stay. Appellee's argument is based on the inherent right of a court to enter a stay. According to appellee, the court has an inherent power to stay actions in order to prevent irreparable injury to the parties or the public. *Scripps–Howard Radio, Inc. v. Federal Communications Comm'n,* 316 U.S. 4, 9–10, 62 S.Ct. 875, 86 L.Ed. 1229 (1942).

We acknowledge that the courts of Pennsylvania have certain inherent rights and powers under our constitution, including the right to enter a stay of execution.[17] *Comm'rs of Sinking Fund of Philadelphia v. City of Philadelphia,* 324 Pa. 129, 188 A. 314 (1936); *see also Sweet v. Pennsylvania Labor Relations Bd., County of Washington,* 457 Pa. 456, 322 A.2d 362 (1974); *Leahey v. Farrell,* 362 Pa. 52, 66 A.2d 577 (1949); Pa.R.A.P. 1701(b)(1). However, exer-

---

**17.** We recognize that the stay of execution in *Sinking Fund* involved a money action, rather than a stay of execution in the context of a death warrant. However, we are merely utilizing this case to demonstrate a court's inherent powers.

cise of inherent rights is not unlimited and can be restricted by the legislature. *Leahey*, 66 A.2d at 580 ("The very conception of inherent power carries with it the implication that its use is for occasions not provided for by established methods."); *see, e.g., Degen v. United States*, 517 U.S. 820, 823, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996); *see also Behr v. Behr*, 548 Pa. 144, 695 A.2d 776, 779 (1997)(inherent power can be limited by statute); *Matter of Campolongo*, 495 Pa. 627, 435 A.2d 581 (1981).

For example, in a matter similar to the one addressed herein, the United States Supreme Court explained that judgments regarding the scope of the writ of habeas corpus are normally for Congress to make and courts will make such judgments where Congress has failed to act. *Lonchar*, 517 U.S. at 322–23, 116 S.Ct. 1293; *see also Felker v. Turpin*, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). In *Lonchar*, the Court considered whether a lower court could dismiss a first federal habeas petition for "equitable reasons" beyond those set forth in the relevant statutes, Federal Habeas Corpus Rules and prior precedents. The court first established, through a review of the history of the "Great Writ of Habeas Corpus," that the trend in habeas corpus actions was toward a more formal system of rules promulgated by Congress, the Rule writers and the courts. 517 U.S. at 322, 116 S.Ct. 1293. This more formalized system of review narrows "the discretion that individual judges can freely exercise." *Id.* So long as these rules are within constitutional restraints and balance the interests of the parties, they must be followed, since the result of following such established rules and precedent is to "reduce uncertainty, avoid unfair surprise, minimize disparate treatment of similar cases, and thereby help all litigants, including the State, whose interests in finality such rules often further." *Id.* at 323–24, 116 S.Ct. 1293. Ultimately, the court found that a specific Habeas Corpus Rule directly addressed the issue that led to the dismissal and thus, concluded that the Court of Appeals could not ignore this rule in favor of equitable relief. *Id.* at 327–28, 116 S.Ct. 1293.

 Similarly, the Post Conviction Relief Act (PCRA) prescribes the scope of collateral review in Pennsylvania. Pennsylvania only recently adopted a comprehensive system for collateral relief. Prior to this time, the only avenue for collateral relief was the writ of habeas corpus and, to some extent, the writ of coram nobis. *Commonwealth ex rel. Stevens v. Myers*, 419 Pa. 1, 213 A.2d 613, n. 9 (1965). In 1965, this Court called for legislation governing collateral proceedings in order to afford "an adequate corrective process for hearing and determining" alleged constitutional violations. *Id.* at 320, 213 A.2d 613. In response, the legislature enacted the Post Conviction Hearing Act (PCHA). The purpose of the PCHA was to provide a procedure which encompassed habeas corpus and coram nobis and to decide challenges to convictions that were imposed without due process. 42 Pa.C.S. § 9542 (repealed). In 1988, the legislature amended in part and repealed in part the PCHA and renamed the act the Post Conviction Relief Act, which provides the current avenue for collateral relief. The PCRA narrowed the grounds for collateral relief in order to establish a scheme for which collateral petitions are to be accorded finality. *Peterkin*, 722 A.2d at 642. Thus, similar to the writ of habeas corpus in the federal system, collateral review in Pennsylvania has moved towards a more formalized system of rules. Additionally, consistent application of section 9545(c) will reduce uncertainty for both parties, as well as minimize disparate treatment of similar cases. In other words, section 9545(c) limits the trial court's discretion to enter the stay, so that an applicant's stay will not be dependent upon the proclivity of the PCRA court. Given that we have concluded that section 9545(c) does not violate either Article V, § 9 or 10 of the Pennsylvania Constitution and is therefore, within constitutional restraints, we hold a lower court may not exercise its inherent right to grant a stay except within the confines enumerated by § 9545(c). We are mindful of the fact that such a conclusion may seem harsh, especially where death is the ultimate result of the denial of relief in these instances, but we cannot ignore that at some point in the proceedings society's interest in finality becomes

overarching.[18] Accordingly, we conclude that a PCRA court is bound by the requirements of section 9545 and can only enter a stay when it has reasonably concluded that such requirements are met.

This conclusion is reinforced by the fact that the criminal rules provide that a stay can remain in effect until the conclusion of the proceedings, including appellate review to this court, if the stay has been granted pursuant to section 9545(c). Pa.R.Crim.P. 1509(A)(2). In other words, so long as a stay is granted by the trial court pursuant to section 9545(c), there is no need for the applicant to reapply for a stay to this court. Thus, we have embraced this section in our own rules of procedure. However, the rules fail to specify any procedures for reviewing and ruling on the application for a stay of execution. In order to provide guidance to the parties and lower courts for the issuance of stays, we now set forth some general guidelines for applicants and lower courts to follow.

Normally, the request for a stay will be contained in the petition for collateral relief and thus the requirements of section 9545(c) will be discussed in the petition, Pa. R.Crim.P. 1509(A)(1). In those circumstances, the courts can follow the general guidelines discussed below in reviewing the request for a stay. However, where the stay application is filed separately from the petition, *see* Comment to Pa. R.Crim.P. 1509(A)(1), or where a party is requesting that this court review the lower court's grant or denial of the stay application, the applicant needs to set forth his argument in favor of the stay in greater detail in the stay application itself.[19]

18. Although the general purpose of the rules set forth in the PCRA does not change whether it is a first or successive PCRA petition, we must emphasize that the instant case involves a second PCRA petition. We do not address whether the disposition of this case would be altered if this was appellee's first PCRA petition; however, we note that the weight of the competing interests in a first PCRA petition are clearly distinct from the weight of the competing interests in a second or successive PCRA petition. *Lonchar, supra.*

19. Although this requirement appears to impose an additional burden on the defendant, it will serve to benefit applicants in instances in

■ Commensurate with the requirements of section 9545, the applicant must set forth: a statement of jurisdiction; if necessary, a statement that a petition is currently pending before the court; and a statement showing a likelihood of prevailing on the merits.

■ First, the applicant must set forth a jurisdictional statement. Specifically, the applicant must demonstrate that the petition is timely because it falls within the time requirements of section 9545(b), or where it is untimely, the applicant must allege that it falls within one of the exceptions to the timeliness requirement and that the petition was "filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(1) and (2). A court should only grant the stay application where it appears that the petition is timely or falls within one of the exceptions to the timeliness requirements. Where the stay petition is denied based upon the failure to meet the time requirements, the applicant must then demonstrate on appeal from the denial of the stay that reasonable jurists would find it debatable whether the lower court was correct in its jurisdictional ruling. *Slack, supra.* Where the lower court determines that the petition is timely, it must next consider whether the petition is pending before the court.

■ Rule 1509(A)(1) of the Pennsylvania Rules of Criminal Procedure provides, in pertinent part, that a request for a stay should be made in the petition for collateral relief. The Comment to this Rule provides that failure to include a statement to stay the execution in the petition will not be considered a waiver and the applicant may file a separate request for a stay. Thus, in most instances, the applicant will not need to demonstrate that a petition is pending before the court, since that requirement will be met by compliance with the rules. However, in the event that there is not a petition

which there is limited time to review the stay application. Moreover, although not implicated in this case, as noted previously, situations may arise in which the stay application is filed before the petition for collateral review, *see e.g. McFarland v. Scott*, 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994), and in those instances the court must be able to determine whether the applicant meets the requirements of this section before entering the stay.

pending before the court, then the applicant will need to demonstrate that there is an action pending before the court sufficient to meet the requirements of this section.[20]

Lastly, the applicant must set forth a statement demonstrating that he has some likelihood of prevailing on the merits, since it is only where there is some likelihood of prevailing on the merits that a stay must be granted. *Barefoot.* We do not expect the applicant to duplicate his entire PCRA petition in the event that the stay application is separate from the petition. Rather, the applicant must merely set forth sufficient facts and law for the lower court to make an educated determination of whether the issue presented was "adequate to deserve encouragement to proceed further." *Slack.*

It is only where these requirements are set forth in the application that the lower court should review the application. It is within the trial court's discretion to determine at what time the stay application should be considered. The trial court may find it more efficient to review the stay application at the same time it disposes of the underlying petition since in most cases the issues set forth in both documents will be similar. However, circumstances may arise where the trial court will need to rule on the stay application at the outset of the proceedings, at which time a cursory review of the stay application may be sufficient to stay the execution so that a more in depth review of the underlying petition can occur.[21] For example, we can envision situations where the lower court may need to grant temporarily the stay pursuant to section 9545 in order to ensure review of the underlying petition. Ultimately, the court may deny the petition for post-conviction relief, but the stay was still necessary in order to afford the court the opportunity to perform an adequate review of the petition. We must emphasize that

20. We have indicated that this opinion does not foreclose the possibility that the "pending" requirement may be defined more broadly. *Infra* at n. 16.

21. We point out that under our opinion today, a stay granted under these circumstances may be directly appealable to this court.

even where the court needs to grant the stay because of time constraints, a stay can be entered **only** where the applicant adequately complies with the requirements set forth above. Where the applicant has met these requirements, a lower court should grant a stay in order to ensure that the applicant is afforded the opportunity to address the underlying merits of the appeal. *Barefoot, supra.* Where the lower court has denied the stay on the basis that the applicant has failed to demonstrate a likelihood of prevailing on the merits, the applicant must demonstrate on appeal that reasonable jurists would find it debatable whether the petition should have been resolved in a different manner. *Slack.*

Applying the above principles to the instant case, it is clear that the trial court erred in granting the stay of execution. This was appellee's second PCRA petition, and thus, appellee had to comply with the time requirements pursuant to section 9545(b). The PCRA court concluded that the petition did not meet the time requirements and dismissed the petition. Paradoxically, the court then granted the stay of execution. Clearly, this action directly contradicted the requirements of section 9545(c), which provide that the petition must be timely filed before a stay can be granted.

The appropriate way to conduct this case was for the PCRA court to deny the stay of execution at the time it denied the petition for post-conviction relief. Thereafter, appellee could have filed an appeal and applied for a stay of execution, which complied with the requirements set forth herein, with this court. At which time, this court would have reviewed the stay application consistent with the standards enumerated herein. However, this is not the procedure that was followed in this instance. Rather, the Commonwealth filed an appeal only from the trial court order granting the stay. As the only issue that is pending before us is the propriety of the trial court's action in granting the stay, this is not the appropriate time to review the underlying merits of appellee's subsequently filed appeal of the denial of post conviction relief. Accordingly, we must vacate the trial court's order staying the execution since

the trial court failed to follow the requirements of section 9545(c).

Chief Justice FLAHERTY files a joining concurring opinion.

Justice CASTILLE files a concurring opinion.

Justice ZAPPALA and SAYLOR concur in the result.

FLAHERTY, Chief Justice, concurring.

I join the opinion of the court, but wish to emphasize the inherent power of the court to enter a stay in order to effectuate justice. When the legislature is silent, a court can *always* enter a stay when it is necessary to avoid injustice.

The opinion of the court briefly acknowledges this power, but understandably emphasizes the exception governing this case. When a convict under sentence of death seeks a stay of execution, he is obligated to follow the statutory procedure, set forth at 42 Pa.C.S. § 9545(c), established to control this precise situation. This in no way abrogates the court's inherent power to grant a stay nor the convict's right to seek a stay: it merely prescribes the procedure governing exercise of the court's power and the convict's rights. Mr. Justice Cappy's opinion for the court aptly analogizes this situation to the relationship between the PCRA and the right of habeas corpus, whereby a petitioner must seek habeas relief only within the confines of the PCRA or suffer the loss of that right. This being understood, I join the opinion of the court.

As appellant failed to follow the procedure of § 9545(c), I agree that the court lacked the authority to stay the execution.

CASTILLE, Justice, concurring.

I agree with the majority's ultimate conclusion that the PCRA court lacked jurisdiction to stay the Governor's execution warrant once it determined that the serial PCRA petition before it was untimely filed. Accordingly, I join in the mandate vacating the stay of execution. The Court's mandate follows upon a discussion of several difficult questions, howev-

er, including: the basis for this Court's jurisdiction; whether the PCRA provides the governing stay standard; if so, what that standard means; whether that standard passes state constitutional muster against challenges based upon the right of appeal and the separation of powers doctrine; and the relevance of federal habeas corpus cases in addressing the meaning and constitutionality of the stay standard. Because I respectfully disagree with the majority's approach to a number of these important questions, I write separately to address those points of disagreement.

First, although I agree that this Court clearly has jurisdiction to review the order below, I do not believe that the only, or even the most appropriate, jurisdictional predicate is extraordinary jurisdiction under 42 Pa.C.S. § 726. A stay of an execution warrant is not like the typical stay order usually governed by Chapter 17 of our Appellate Rules. In the typical non-capital case, the movant seeks to stay **an order of the lower court** pending an appeal of that order. The stay here, however, is not a stay of the order of the PCRA court denying appellee's untimely, serial PCRA petition. Instead, the PCRA court stayed an **executive** order, *i.e.*, the Governor's warrant of execution. In my view, the order staying that warrant is itself a final, appealable order under Pa.R.A.P. 341(b).

Rule 341(b) defines a final order as, *inter alia*, "any order that: (1) disposes of all claims and all parties." A warrant of execution must specify a day of execution occurring no later than sixty days after the warrant is signed. 61 P.S. § 3002. The warrant here scheduled appellee's execution for January 27, 2000. The stay entered by the PCRA court on December 21, 1999, rendered that particular warrant unenforceable. As the Commonwealth properly and succinctly notes:

A death sentence must be carried out at a particular time under a particular warrant, or it cannot be carried out at all. A stay that persists beyond the time fixed by the warrant invalidates that warrant—finally, totally, and permanently. Insofar as the warrant of execution is concerned, such an order disposes of all claims and of all parties.

Supplemental Brief for Appellant at 7. Once the warrant has expired, the sentence of death can be carried out only upon issuance of a new warrant or by operation of the procedure set forth in 42 Pa.C.S. § 9711(j) and 61 P.S. § 3002. The stay order, thus, is final and appealable under Rule 341(b). Moreover, the stay of execution granted PCRA relief for all intents and purposes by rendering the existing death warrant unenforceable. The final, appealable nature of such an order is separately recognized in the Rules of Criminal Procedure. *See* Pa.R.Crim.P. 1510. Jurisdiction over such a final order in a capital case rests exclusively in this Court. 42 Pa.C.S. § 9546(d).[1]

The stay order is independently appealable to this Court because it amounts to a grant of injunctive relief. *See* Pa. R.A.P. 311(a)(4).[2] The majority rejects this approach for two reasons: (1) because a stay has an injunctive effect only if it has "the effect of dismissal of the case or permanent denial of the requested action," and the question whether that effect exists is discretionary, which may lead to varying results; and (2) because Chapter 17 of the Rules of Appellate Procedure, rather than Rule 311(a)(4), prescribes the mechanism for review of stay orders. With respect to the first point, the effect of a stay of an execution warrant is decidedly **not** subject to varying discretionary interpretations. As noted above, since an execution warrant must be acted upon within a specific time or else expire, a stay by the lower court in all instances amounts to an outright denial of the effect of the warrant. With respect to the second point, the existence of Chapter 17 does not prevent this Court from considering the

1. This Court's order of August 11, 1997, which suspended the Capital Unitary Review Act (CURA), 42 Pa.C.S. §§ 9570–79, and provisions of the PCRA which referred to CURA, specifically suspended the 1995 and 1997 amendments to § 9546(d). The previous, 1988 version of the subsection thus governs, and it provides that a final order in a case involving the death penalty shall be directly appealable "only to the Supreme Court pursuant to its rules."

2. Rule 311(a)(4) states that an appeal may be taken as of right, without reference to Rule 341, from "[a]n order granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions."

unique nature of a stay of execution, as opposed to a stay of a judicial order, which maintains the status quo pending an appeal of that order. Since the ineluctable effect of the stay order is to enjoin the execution, an appeal is proper under Rule 311(a)(4).[3]

My second concern involves the majority's interpretation of 42 Pa.C.S. § 9545(c)(2), the provision of the PCRA governing stays of execution. This provision was enacted as part of the same November 1995 legislation that produced the Capital Unitary Review Act (CURA), 42 Pa.C.S. §§ 9570–79. This Court's August 11, 1997, order suspending CURA and provisions in the PCRA which referred to unitary review or to specific CURA provisions—*i.e.*, §§ 9543(a)(4), 9544(b), 9545(c)(3) & (d)(2) & 9546(d)—did not suspend § 9545(c)(2). Although § 9545(c)(2) does not explicitly refer to CURA, I believe it is properly understood only in light of the overall capital review construct that the November 1995 legislation, of which it was a part, would have established.

Had CURA not been suspended, the PCRA's stay provision would have applied primarily, and eventually exclusively, to capital cases involving serial petitions for collateral relief. First petitions for collateral relief in capital cases subject to CURA would not have proceeded under the PCRA at all, but instead would have been subject to CURA's simultaneous post-trial motion/collateral attack and unitary review provisions. Moreover, no stay of execution would issue in a first collateral attack in a CURA case both because the Governor could not sign an execution warrant until after completion of the hybrid procedure and appeal, *see* 42 Pa.C.S. § 9711(i)-(j), and because, under this Court's rules, the pendency of the hybrid appeal would operate to stay the execution. *See* Pa.R.A.P. 1761. CURA made clear that it was only "subsequent petitions" in CURA cases that would be governed by the PCRA. *See* 42 Pa.C.S. § 9578 (no further review of

---

**3.** Although the stay order is appealable under our existing rules, I agree with the majority that the matter should be referred to the Appellate Rules Committee to examine the propriety of fashioning more specific rules to govern review of orders staying warrants of execution.

"subsequent petitions" unless petition is filed under Subchapter B (*i.e.*, the PCRA), and alleges one of three extraordinary circumstances [circumstances mirroring the exceptions to the PCRA time-bar found in § 9545(b) ] ). Thus, in capital cases which would have been subject to CURA, the PCRA's stay of execution standard was designed to apply **only** to serial petitions.

The PCRA stay provision is more complicated, of course, because the General Assembly had to account for the many pre-CURA capital cases that had already proceeded through direct appeal to this Court. These cases could not proceed under CURA's hybrid unitary review approach and, thus, would be governed by the PCRA. As to that class of potential capital PCRA petitioners, the legislature specifically excluded a single sub-class from operation of the new stay of execution standard: first-time PCRA petitioners whose death sentences had recently been affirmed, *i.e.*, between January 1, 1994, and January 1, 1996. As to this sub-class, the PCRA requires no particular showing to secure a stay. First-time capital PCRA petitioners whose sentences had been affirmed before January 1, 1994, however, as well as capital defendants filing serial collateral attacks under the PCRA, would have to satisfy the statutory stay standard.

This distinction in treatment of first-time capital PCRA petitioners no doubt reflected a legislative judgment that capital defendants whose direct appeals had only recently been decided had not yet had sufficient opportunity to seek collateral review, while defendants in the older cases had such an opportunity. As to the older cases, there was greater reason to conclude that the failure to seek PCRA review was a deliberate delaying tactic, warranting application of a stricter standard for a stay. In this regard, it is worth noting that capital defendants whose sentences were affirmed before 1994 were not subject to the warrant signing statute, 42 Pa.C.S. § 9711(j), which took effect March 15, 1995; those defendants thus had no external prompting, such as the issuance of a death warrant, to cause them to seek PCRA review.

The majority notes that its analysis of the PCRA stay standard is confined to cases involving serial PCRA petitions, since that is the posture of this case, and that it expresses no view regarding the availability of a stay of execution in a case involving a first PCRA petition. Majority op. at 733 n. 11. But, in light of the interrelationship between § 9545(c)(2) and CURA, it would be both accurate and useful to make clear that § 9545(c)(2)'s stay standard was **intended** to apply only to serial petitions for collateral review and to first petitions in cases where the affirmance of sentence pre-dated January 1, 1994. The General Assembly expressed **no** intention to have the new standard apply to timely-filed first petitions for collateral review. Furthermore, since the 1995 legislation enacting § 9545(c)(2) also included the new one-year PCRA filing deadline (a provision which survived the suspension of CURA), there is a mechanism in place that assures timely PCRA filings now that the suspension of CURA reestablished the PCRA as the repository for first-time collateral attacks in capital cases. Thus, there is simply no reason, as a matter of statutory construction, to subject timely-filed, first capital PCRA petitions to the statutory stay standard.

A separate question, of course, is whether § 9545(c)(2) should retain any force at all given its obvious relationship with the now-suspended CURA. Since the provision explicitly addresses both CURA and non-CURA situations, however, and reflects a rather clear and unimpeded judgment with respect to the substantive standard that should govern the availability of a stay of execution in **serial** petition cases, such as this one, I see no reason why it should not apply here.[4] At a minimum, the standard certainly should inform our consideration. And, for reasons I address more fully below, since the statutory stay standard mirrors the familiar test in our jurisprudence for assessing whether or not to issue a stay, it is an appropriate standard to apply to serial petition cases.

4. In light of the new PCRA time bar, which required the filing of first petitions in the older cases by no later than January of 1997, there may not be any **first** petition cases where the stay issue will arise.

My next concern involves the majority's consideration of the inter-related questions of: (1) the meaning of the requirement that the capital defendant make "a strong showing of likelihood of success on the merits" to obtain a stay under the PCRA; and (2) whether that requirement impairs the defendant's state constitutional right of appeal from a court of record. The language of the standard is certainly familiar: the General Assembly obviously adopted it from this Court's existing stay jurisprudence. *E.g. Commonwealth, Board of Finance & Revenue v. Rosetta Oil, Inc.*, 535 Pa. 343, 635 A.2d 139 (1993) (stay applicant must make strong showing that (1) he is likely to prevail on merits; (2) he will suffer irreparable injury without stay; (3) stay will not substantially harm other interested parties; and (4) stay will not adversely affect public interest); *Pennsylvania PUC v. Process Gas Consumers*, 502 Pa. 545, 467 A.2d 805 (1983). *Accord Hilton v. Braunskill*, 481 U.S. 770, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).[5]

The majority's discussion of the PCRA stay provision paradoxically does not proceed according to the PCRA's plain language, nor does it acknowledge the importance of the *Process Gas* line of cases in explicating the standard. Instead, the majority relies upon the federal habeas corpus statute and federal cases construing that provision. I believe this inappropriate approach introduces confusion into an area where clarity is particularly necessary.

The majority states that the PCRA stay language "closely tracks the language" of 28 U.S.C. § 2253, the federal provision governing state prisoner appeals from the denial of habeas relief. Majority op. at 735. The majority then holds that the federal standard for habeas **appealability,** a standard explicated in a line of cases beginning with *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), should

5. Section 9545(c)(2)'s adoption of only the first part of our stay formulation reflects a legislative appreciation of the unique nature of these cases. Where execution is imminent, a petitioner who can show that he is likely to prevail on appeal necessarily would suffer irreparable injury absent a stay, and neither other interested parties nor the public interest could be adversely affected by permitting a stay in that circumstance.

control this Court's construction of § 9545(c)(2)'s stay provision. Under the federal test that the majority adopts, a stay would issue under the PCRA only if the applicant showed "probable cause to proceed further." Majority op. at 734. Further construing this phrase in light of the federal cases, the majority states that a stay may issue in cases where the PCRA court has found the petition untimely if "reasonable jurists would find it debatable whether the lower court was correct in its jurisdictional ruling," while the merits of a petition would warrant a stay if the issue presented is "adequate to deserve encouragement to proceed further." *Id.* at 741. These formulations are imported directly from *Barefoot*'s explication of the federal habeas appeal standard.

The majority also relies on federal habeas cases to resolve appellee's claim that the stay provision in § 9545(c) burdens his state constitutional right of appeal. The majority notes that constitutional rights are not absolute, but are instead subject to reasonable legislative restriction; therefore, the constitutionality of § 9545(c)(2) depends upon the reasonableness of the limitation it places upon the right of appeal. Majority op. at 732 (citing *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 642 (1998)). In explicating that which may be reasonable for state constitutional purposes, again the majority turns to the federal habeas cases. The majority seems to imply that the federal cases, including the cases discussing the availability of stays of execution, have been assessed for constitutional reasonableness. Majority op. at 732 (citing *Lonchar v. Thomas*, 517 U.S. 314, 322–23, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996)). For that reason, the majority states, the federal standards should be utilized in assessing the reasonableness of § 9545(c)(2) in the face of the constitutional right of appeal challenge presented here. Majority op. at 732, 734. Construing the PCRA stay standard as the equivalent of the federal *Barefoot* standard, the majority concludes that the PCRA stay standard is reasonable and, for that reason, passes state constitutional muster.

The majority's reliance upon the federal habeas cases to explicate the PCRA stay standard and to evaluate whether it

unreasonably burdens the state constitutional right of appeal is misplaced. Addressing the constitutional question first, federal habeas jurisprudence not only does not control questions of state collateral review, but federal habeas cases do not address the constitutional right of appeal question presented here. Indeed, they **cannot** address that question: State prisoners in federal habeas cases have no equivalent federal claim because there is no federal constitutional right of appeal. *See Martinez v. Court of Appeal of California,* 528 U.S. 152, 160, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000) (" '[t]he right of appeal, as we presently know it in criminal cases, is purely a creature of statute' ")(quoting *Abney v. United States,* 431 U.S. 651, 656, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)).

Thus, the federal habeas cases relied upon by the majority involve questions of **federal statutory construction,** not of constitutionality. Until 1996, the federal habeas appeal statute, 28 U.S.C. § 2253, provided **no** right of appeal to a habeas petitioner **unless** a district or circuit court judge issued "a certificate of probable cause" (commonly called a "CPC" in habeas parlance). *See Slack v. McDaniel,* 529 U.S. 473, 480, 120 S.Ct. 1595, 1602, 146 L.Ed.2d 542 (2000).[6] The probable cause standard was not further delineated statutorily. *Barefoot* addressed that omission and held that a CPC should issue only if the applicant made "a substantial showing of the denial of a federal right." 463 U.S. at 893, 103 S.Ct. 3383. The *Barefoot* formulation of the CPC test was alternatively expressed in that opinion as **not** requiring a showing that the petitioner should prevail on the merits, but instead a showing only that the issues are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues presented were adequate to deserve encouragement to proceed further. *Id.* at 892–93 & n. 4, 103 S.Ct. 3383.[7]

---

**6.** The CPC requirement was first imposed by Congress in 1908 out of "concern[ ] with the increasing number of frivolous habeas corpus petitions challenging capital sentences which delayed execution pending completion of the appellate process...." *Barefoot, supra* at 892–93 n. 3, 103 S.Ct. 3383.

**7.** The 1996 Antiterrorism and Effective Death Penalty Act (AEDPA) amended § 2253, changing both the nomenclature, *i.e.,* it now requires

The federal cases examining the standard for issuing a stay of execution in a federal habeas case, beginning with *Barefoot*, have necessarily looked to the statutorily-based CPC requirement since that test determines whether the habeas petitioner **will be permitted to appeal at all.** Congress's appealability standard necessarily controls the availability of a stay because a more restrictive rule would undo the statutory right of appeal:

> When a [CPC] is issued ..., petitioner must then be afforded an opportunity to address the merits, and the court of appeals is obligated to decide the merits of the appeal. Accordingly, a circuit court, where necessary to prevent the case from becoming moot by the petitioner's execution, should grant a stay of execution pending disposition of an appeal when a condemned prisoner obtains a certificate of probable cause on his initial habeas appeal.

*Id.* at 893, 103 S.Ct. 3383. *Accord Lonchar v. Thomas*, 517 U.S. 314, 319–20, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996).

The majority suggests that the "limited review" and stay procedure available in the federal habeas capital arena has been subjected to evaluation and approval for constitutional "reasonableness," an evaluation the majority says is measured by whether the limits "exist within constitutional constraints and balance the objectives of maintaining the court's freedom to issue the writ against a state's interest in finality." Majority op. at 732. But the citation following this proposition, *Lonchar*, 517 U.S. at 322–23, 116 S.Ct. 1293, does not support it. After surveying the history of federal habeas, *Lonchar* merely noted that habeas review has come to be governed by "complex procedural principles that regularize and thereby narrow the discretion" of individual judges, which are "embodied in statutes, rules, precedents, and practices that control

that a certificate of appealability (COA) issue for an appeal to proceed, and also stating that a COA can issue only if the applicant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the majority notes, *Slack v. McDaniel* construed the COA standard to be a codification of the CPC/*Barefoot* standard, albeit with the additional "constitutional right" re······tion. 120 S.Ct. at 1603–04, 120 S.Ct. 1595.

the writ's exercise." 517 U.S. at 322–23, 116 S.Ct. 1293. "Within constitutional constraints," the principles "reflect a balancing of objectives (sometimes controversial), which is normally for Congress to make, but which courts will make when Congress has not resolved the question." *Id.* at 323, 116 S.Ct. 1293.[8] *Lonchar* stands for the rather unexceptional proposition that federal habeas courts are not free to ignore "this body of statutes, rules, and precedents" and apply additional "ad hoc, equitable" grounds to dispose of a habeas petition. The fact that federal habeas principles embodied in statutes, rules and cases strive to balance objectives does not mean that legislative enactments in the federal habeas arena are subject to judicial **disapproval** on grounds of "unreasonableness," much less that the federal constitution mandates that evaluation and disapproval.

In short, I do not think that the federal cases cited by the majority stand for the proposition that the habeas statute, including the probable cause standard adopted in the stay cases, has been subject to, and survived, constitutional scrutiny for reasonableness. Instead, the stay standard is dictated by the statute creating the right of appeal in the first place. Thus, the federal habeas cases do not support the proposition that the PCRA's stay provision, so long as it is interpreted as being identical to the *Barefoot* standard, likewise passes constitutional muster. The PCRA stay question this Court faces derives from a state constitutional provision, and its subsequent legislative restriction, having no federal habeas counterpart. The federal habeas cases are simply not relevant to this question.

I also disagree with the majority's conclusion regarding the non-constitutional question of statutory interpretation—*i.e.*, whether the PCRA stay standard is in fact the equivalent of

---

**8.** The constitutional constraints referred to were not identified in *Lonchar*, but the reference certainly was not to a non-existent right of appeal. Presumably, the Court was referring to the Suspension Clause, *i.e.*, Article I, § 9, clause 2 of the United States Constitution, which provides that "[t]he privilege of the Writ of Habeas Corpus shall not be suspended." See *Felker v. Turpin*, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996).

the *Barefoot* standard. The actual language used in the PCRA ("strong showing of likelihood of success on the merits") far more closely tracks this Court's stay standard ("strong showing" that stay applicant "is likely to prevail on the merits," *Process Gas, supra*) than the federal appealability standard ("substantial showing of the denial of a federal [or after AEDPA, constitutional] right"). Furthermore, certain formulations of the *Barefoot* probable cause test are squarely at odds with the PCRA/*Process Gas* stay language. For example, one formulation of the *Barefoot* test suggests that "the petitioner need not show that he should prevail on the merits." 463 U.S. at 893 n. 4, 103 S.Ct. 3383. But the PCRA standard **explicitly requires** "a strong showing of likelihood of success on the merits." Also, the *Barefoot* Court states that its test is the "primary means of separating meritorious from frivolous appeals," 463 U.S. at 892, 103 S.Ct. 3383, which suggests that stays should issue in all but frivolous cases. In adopting Pennsylvania's now-familiar stay language, which the PCRA merely echoes, this Court in *Process Gas* specifically rejected the notion that a stay is warranted if the question presented is merely "not frivolous," noting that that "is hardly a meaningful standard" as it would be satisfied "in the overwhelming majority of appeals." 467 A.2d at 808.

Since the PCRA stay standard obviously codifies the first part of the *Process Gas* test, this Court should interpret it in accordance with its plain language and our case law on stays, rather than employing a strained reliance upon federal habeas cases which involve a different statute and different constitutional and jurisprudential concerns. This interpretation is preferable not only because it is dictated by the plain language of the PCRA, but also because importing an arcane and ever-changing federal habeas jurisprudence will unnecessarily confuse this narrow, quintessential question of state statutory interpretation.

The relevance of the federal habeas experience to our task is, in my mind, more subtle. A major concern addressed by the 1996 amendment of the federal habeas statute, as well as much of the United States Supreme Court's recent habeas jurisprudence, is that habeas review not unnecessarily impede

the finality of state court criminal judgments, particularly in capital cases. *See Hohn v. United States*, 524 U.S. 236, 118 S.Ct. 1969, 1982, 1984, 141 L.Ed.2d 242 (1998) (Scalia, J., dissenting) (1996 amendment to habeas statute "continues a long tradition of provisions enacted by Congress that limit appellate review of petitions;" purpose of amendment "was to eliminate the interminable delays in the execution of state and federal criminal sentences"). *See generally* Kent S. Scheidegger, *Habeas Corpus, Relitigation, and the Legislative Power*, 98 Colum.L.Rev. 888 (May 1998). The PCRA stay provision, aimed primarily at serial state collateral attacks upon final criminal judgments, obviously is animated by a similar concern with finality. Other provisions in the 1995 PCRA amendments, most notably the one-year period of limitations, corroborate the concern with finality. The majority rightly stresses the importance and legitimacy of this concern in addressing the state constitutional question of whether the stay provision unreasonably interferes with the right of appeal. The majority properly cites to federal habeas cases as additional support for the proposition that the General Assembly's concern with finality in criminal cases is legitimate, which in turn suggests that the stay provision here is not an unreasonable burden on the state constitutional right of appeal. Majority op. at 735–36. But I cannot join in the majority's reliance upon the federal habeas cases for the broader interpretive propositions embraced therein.

Addressing the right of appeal question, I agree with the majority that this stay provision is reasonable and, thus, does not violate appellee's state constitutional right of appeal.[9] I see nothing unreasonable in the General Assembly imposing limitations upon collateral attack, including collateral appellate

9. I would note that other legislative limitations on the constitutional right of appellate review in criminal cases have been upheld as reasonable by this Court. *See Commonwealth v. McFarlin*, 402 Pa.Super. 502, 587 A.2d 732 (1991) (en banc) (42 Pa.C.S. § 9781(b), which provides that discretionary sentencing appeals are reviewable only upon petition by aggrieved party and subsequent discretionary leave of appellate court where it finds substantial question present, held to be reasonable restriction upon right of appeal and thus constitutional), *affirmed per curiam*, 530 Pa. 167, 607 A.2d 730 (1992); *Sayres v. Commonwealth*, 88 Pa. 291, 306–08 (1879) (statutory provision requiring that writ of error

review, as a case progresses farther from the actual trial. Automatic entitlement to a stay, or even an overly permissive stay standard such as the presence of a "non-frivolous" issue, could destroy any prospect of finality in capital cases. *See Sayres v. Commonwealth*, 88 Pa. 291, 307 (1879) ("If the legislature may fix no limitation whatever upon the issuing of such writs, it is not too much to say that capital punishment cannot be hereafter enforced in Pennsylvania"). The General Assembly, which was not obliged to afford an avenue for serial collateral attacks in the first place, reasonably could require that a condemned prisoner meet the prevailing standard for stay/injunctive relief before a presumptively valid warrant of execution, issued pursuant to a final, affirmed judgment of sentence of death, could be stayed and rendered nugatory. The reasonableness of § 9545(c)(2) is inescapable when it is understood, as it must be in light of its plain language and its interrelationship with CURA, as primarily applying to serial PCRA petitions. Those petitions invariably will be untimely on their face, such as the one dismissed by the PCRA court in this matter, and the relatively simple question will be whether one of the three narrow exceptions to the PCRA time-bar applies. Requiring a showing of likelihood of prevailing on the merits as to one of those exceptions before a stay may issue is not at all unreasonable. As the majority rightly notes, "at some point in the proceedings society's interest in finality becomes overarching." Majority op. at 739. A PCRA petitioner whose serial petition was denied on jurisdictional grounds of untimeliness, and who cannot show that he is likely to prevail on the merits of his claim that he qualifies under one of the exceptions, has reached that point.[10]

My next concern involves the majority's discussion of the court's inherent power to grant a stay. In my view, it is

in capital case be sought from Supreme Court no later than twenty days after death sentence held to be reasonable limitation upon constitutional provision establishing right of review in Supreme Court by way of writ of error).

10. With respect to the second constitutional question raised by appellee, I agree with the majority that the stay provision is substantive, not procedural, and thus does not violate the separation of power doctrine by intruding on this Court's rulemaking authority.

essential that we bear in mind that the stay at issue here is not of a judicial order, such as the order denying the serial PCRA petition, but that it is of an executive warrant of execution. Whatever "inherent" stay power the courts may possess over such warrants may certainly be restricted by the General Assembly. The restriction in this case is perfectly lawful. The General Assembly was not required to provide an avenue to entertain serial collateral challenges at all. Having created the right to challenge in certain narrowly prescribed instances, I see no reason why the General Assembly could not adopt this Court's *Process Gas* standard, the usual jurisprudential standard employed when injunctive relief is requested, to ensure that the PCRA would not be used, and abused, to render the death penalty unenforceable in Pennsylvania. The General Assembly having spoken, I agree that a PCRA court has the authority to enter a stay of execution in a case involving a serial PCRA petition **only** under the standard set forth in § 9545(c)(2).

Finally, I do not join in the "general guidelines" the majority promulgates regarding issuance of stays. Once the PCRA court below determined that this serial PCRA petition was time-barred, it had no jurisdiction to stay the warrant of execution. That is enough to decide this case.